Max Moskowitz
Ariel Peikes
OSTROLENK FABER LLP
845 Third Avenue, 8th Floor
New York, New York 10022
mmoskowitz@ostrolenk.com
apeikes@ostrolenk.com
Tel.  (212) 596-0500
Fax  (212) 382-0888

*Attorneys for Plaintiff*
*SOUND AROUND, INC.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOUND AROUND, INC., d/b/a PYLE USA, | Civil Action No: 22-cv-6943 |
| *Plaintiff,* | |
| v. | |
| SHENZHEN KEENRAY INNOVATIONS LIMITED, DANXIA WU, WENG FENG PENG (a/k/a Fenson Peng), and AMAZON, INC., | |
| *Defendants*. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS

Sound Around relies on the facts set forth in the Declarations of Jerry Brach ("Brach") and FendLi Lv ("Helen"), and as set forth chronologically in the Complaint.

## INTRODUCTION AND SUMMARY OF FACTS

Much has been written about China nationals "gaming," more starkly, "defrauding," of the United States intellectual property (IP) laws and procedures, in manner that blocks third parties from conducing legitimate commerce in the United States. The annexed articles in **Exhibit 1** hereto provide but a glimpse of the massive frauds being perpetrated on the United States Patent and Trademark Office ("PTO") through fraudulent IP filings, including as detailed in the article taken from the official web site of the PTO.

In a nutshell, the corporate Defendant Shenzhen Keenray Innovations Limited ("Keenray") purchased from a Chinese manufacturer (referred to below as "Goldenhot") a product that warms towels, so bathers can dry themselves with a hot towel after bathing/showering. Goldenhot sold one particular style of their towel warmers to Keenray, as well as to several other U.S. customers including to the Plaintiff, Sound Around, Inc., dba PyleUSA ("Sound Around"). To block the other purchasers of the subject Goldenhot towel warmer from competing with Keenray on the Amazon selling portal, the Defendant Danxia Wu ("Ms. Wu"), a principal of Keenray, filed for and was granted a U.S. design patent on the subject towel warmer and assigned the patent rights to Keenray. Acting together with another principal of Keenray, the Defendant Weng Feng Peng ("Mr. Peng"), Ms. Wu requested Amazon to "de-list" the competing, identical Goldenhot towel warmer being sold by Sound Around. Unaware of that the involved patent was fraudulently procured, Amazon complied, and warned Sound Around that it is at a risk of losing its rights to sell hundreds of other products on the Amazon portal.

Sound Around's counsel wrote to Mr. Peng (and to Keenray's U.S. patent counsel), warning him that the fraudulent patent filing can have dire consequences to his company Keenray, and pointing out, repeatedly, that Danxia Wu did not invent and IS NOT the inventor of the involved product design. Mr. Peng exchanged several emails with Sound Around and its counsel, and even met with a principal of Goldenhot in an effort to resolve this dispute. But to no avail. While never denying Sound Around's and Goldenhot's assertions that the patent filing was improper, Mr. Peng insisted and persisted that Keenray is the "official owner" of the involved patent (identified below), and that Keenray will not retract its Amazon de-listing request, until and UNLESS Sound Around agrees to raise the price at which Sound Around offers this product on Amazon, i.e., to a selling price approved by Keenray.

Keenray's actions are jeopardizing and irreparably harming Sound Around's standing with Amazon, which is the lifeline of its business. This motion requests that the Court restore the *status quo ante*, by ordering Keenray (as well as Amazon) to restore the subject product listing and allow this dispute to be resolved judicially in this Court, rather than privately by Amazon/Keenray.

Amazon requires merchants using its selling portal, who request a de-listing of a competitor's product based on IP rights or that the competitive product is "counterfeit," to provide an email contact address, to allow resolution of any problem if possible or perhaps to clear up any misunderstandings. Using the email contact provided by Amazon, the parties herein have communicated extensively. More importantly, all of the moving papers herein have been served and received by the Defendants herein (including Amazon), whereby Sound Around requests this Honorable Court to deem Keenray to have been duly served with the current motion

papers and to direct Keenray, Mr. Peng and Ms. Wu to respond to the submissions herein within a reasonable time.

## ARGUMENT

### I.   Plaintiff is Entitled to a Preliminary Injunction and Temporary Restraining Order Prohibiting Defendants from Continuing to Interfere with Sound Around's Offering its Towel Warmer Product on Amazon.

#### A.  Legal Standard for Preliminary Injunction

A movant seeking a preliminary injunction must show (1) either (a) a likelihood of success on the merits; or (b) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor," (2) "a likelihood of irreparable harm" in the absence of an injunction; (3) that "the balance of hardships tips in their favor"; and (4) that "public interest would not be disserved" by issuing preliminary relief. *See CJ Products LLC v. Snuggly Plushez LLC,* 809 F. Supp. 2d 127, 141 (E.D.N.Y. 2011) (citing *Salinger v. Colting,* 607 F.3d 68, 80 (2d Cir. 2010)); *see also eBay, Inc. v. MercExchange,* 547 U.S. 388, 391 (2006); *Winter v. Natural Res. Def. Council, Inc., 555* U.S. 7, 20 (2008).

"The purpose of such interim equitable relief is not to conclusively determine the rights of the parties . . . but to balance the equities as the litigation moves forward." *Home It, Inc. v. Wen*, 19-CV-7070 (E.D.N.Y. Jan. 21, 2020)(Hon. Chen) Quoting *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (internal citations omitted).

The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Id*. at 221 (quoting

*Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). To show irreparable harm the moving party must establish that "'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Id.* (quoting *Kamerling*, 295 F.3d 206, 214 (2d Cir. 2002)). Additionally, "irreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.* (internal quotation marks and citation omitted).

1. **Plaintiff Will Suffer Immediate and Irreparable Injury and Has No Adequate Remedy**

"The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (quoting *Kamerling*, 295 F.3d at 214). The moving party must establish that "'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Id.*: see also *Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017) (summary order) ("Irreparable harm exists 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'") (quoting *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)); *WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 285* (2d Cir. 2012) (defining irreparable harm as "harm to the plaintiff's legal interests that could not be remedied after a final adjudication," such as when "the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss").

In *3M Co. v. HSBC Bank USA, N.A.,* No. 16-CV-5984 (PGG), 2018 WL 1989563, at *7 (S.D.N.Y. Apr. 25, 2018, Judge Gardephe of the Southern District of New York concluded that the irreparable injury test is met where the preliminary injunction requestor has demonstrated that at least there is a "substantial chance" that it "cannot be returned to the position it previously occupied," if a preliminary injunction is denied. *Home It*, citing *Brenntag Int'l. Chemicals, Inc.*, 175 F.3d 245, 249 (2nd Cir. 1999).

Here, the Keenray Defendants (i.e., Keenray, Wu and Feng) procured the '810 Patent through fraud on the U.S. Patent Office and have used the fraudulently-obtained Patent to disrupt Plaintiff Sound Around's relationship with Amazon. Sound Around has been developing its relationship with Amazon for years, and has opened and continues to operate several Amazon stores including "SereneLife" and "NutriChef", among others. (See Complaint at Pars. 14-15).

Not only have Defendants succeeded in removing Sound Around's legitimate product, the SA Towel Warmer, on bogus allegations of patent infringement, Amazon has issued the stern warning to Sound Around that:

"If we receive more complaints about your listings, we may take further action **up to and including not allowing you to sell to Amazon**."

(Emphasis supplied)(See Brach Decl., at Par. 10). The complete loss of sales by Sound Around on Amazon would be a devastating blow to its business.

Although Sound Around sells through other ecommerce sites, including eBay and Walmart (See Brach Decl., at Par. 5), nothing compares to Amazon.  Amazon is the world's largest ecommerce retailer.  This is precisely why Sound Around has invested so much time and effort to establish its relationship with Amazon and, over time, opening several Amazon "storefronts."

Sound Around can survive the temporary loss of selling a single product, e.g., the SA Towel Warmer (although Sound Around's ability to recover money damages from a Chinese company and individuals engaged in fraud on the Patent Office and on Amazon is, in Sound Around's estimation, very doubtful). Sound Around offers thousands of products to U.S. consumers, including high-end electronics, homeware, kitchen appliances, fitness products, and toys. (Brach Decl., at Par. 3). Losing its ability to sell one of thousands of products is not Sound Around's overarching concern.

Rather, the existing "strike" against Sound Around's Amazon account is deeply troubling because it could cause Amazon to shutter all of Sound Around's stores on Amazon, preventing Sound Around from selling hundreds of its current products to Amazon's customers. Amazon has informed Sound Around, and it is well-known that multiple allegations of IP infringement lead to loss of rights to sell on Amazon. (See Brach, Decl., at Pars. 10-12) Sound Around is especially susceptible to future claims of IP infringement because Sound Around does not design or manufacture its products. (Brach Decl. Pars. 3-5). Instead, Sound Around specially orders thousands of different products and has Sound Around brands private-labeled onto the product. (Id., at Par. 4). Any one of these numerous products could lead to an additional claim of IP infringement, potentially equally dubious to Keenray's allegation or, potentially, with some merit. *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 540, (S.D.N.Y. May 13, 2011) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark. . . because loss of control over one's reputation is neither calculable nor precisely compensable."). Here, Plaintiff will lose control over its brands by losing access to the world's largest ecommerce platform,

Amazon, all because a fraudulent complaint has made it susceptible to immediate and irreparable injury.

There is only one way to have this "Sword of Damocles" removed from overhead Sound Around: for this Court to order the Keenray Defendants to withdraw their complaint to Amazon, especially so long as it is based upon the fraudulently procured '810 Patent.  Amazon's prescribed way for resolving the complaint and withdrawing the "strike" against Sound Around's account is for the complaining party, Keenray, to "submit a retraction" to Amazon. (Brach Decl., at Par. 9). Amazon will not accept "forwarded or attached retractions" (Id.), even in the unlikely event that Sound Around could get Keenray to agree that the complaint should never have been submitted in the first instance, or to act on its own accord and withdraw the complaint. Moreover, Sound Around and Goldenhot (the company that actually created the subject product design)(Helen Decl., at Pars. 4-9) have communicated with Keenray and demanded that Keenray withdraw the complaint to Amazon; however, Keenray steadfastly refuses, demanding that Sound Around either raise its prices for the subject product or buy the product from Keenray. (See Brach Decl., Pars. 22-24; and Helen Decl., Pars. 13-14).

Therefore, irreparable harm to Sound Around is likely, unless this Court orders the Keenray Defendants to withdraw their complaint to Amazon.  Even if the Keenray Defendants fail to comply with this Court's Order, Amazon can at least note the Court's Order, and that the Keenray parties have failed to comply.  In the alternative, the Court can order Amazon to re-list Sound Around's SA Towel Warmer product if the Keenray Defendants fail to comply with a Court Order.

**1A**.  **Defendant Wu and Keenray's Fraud on the Patent Office and Amazon Weighs in Favor of Finding Irreparable Harm**

In *New Falls Corp. v. Soni Holdings, LLC,* 2019 U.S. Dist. LEXIS 113901 **31-32, 2019 WL 4015170 (E.D.N.Y. July 5, 2019), a decision by Magistrate Judge A. Kathleen Tomlinson of this District, subsequently adopted in its entirety by District Court Judge Arthur D. Spatt, it is pointed out that irreparable harm is easier to meet in cases where the allegation of fraud is invoked. In the *New Falls Corp.* case, plaintiff alleged that defendants had conspired to fraudulently convey real property. Magistrate Judge Tomlinson noted, in finding that irreparable harm was present: "the Court is satisfied that in light of Defendants' past and current conduct, and particularly in light of the multiple badges of fraud Plaintiff has highlighted both in its Amended Complaint and moving papers, Defendants would effect the further, likely fraudulent conveyance of the Newark Property."

In the instant case, Defendants Wu and Keenray lied to the Patent Office and claimed that Wu is the "inventor" of a product design that already existed. Goldenhot has confirmed that it sold product embodying the claimed design in August 2020 to Keenray. (Helen Decl., at Par. 9). Keenray's patent application was filed in November 2020, more than three (3) months after it purchased product with the subject design from Goldenhot. (See Helen Decl., Par 9-10). Defendant Wu swore under penalty of perjury "punishable by fine or imprisonment, or both" that she had invented a product design that her company had already purchased product incorporating that design from a third-party. The Keenray Defendants continue to wield the fraudulently procured patent against legitimate businesses such as Sound Around and Amazon. Given these facts, it is clear that the Keenray Defendants will say anything, even upon penalty of perjury, to further their business interests. As such, Sound Around has met its burden for showing irreparable harm.

{02800132.1}                    9

**1B.  The Keenray Defendants are Unlikely to Pay Sound Around
Compensation for Sound Around's Injuries or Even to Appear in this Court**

Defendants' pattern of conduct shows that they are unlikely to be held accountable,

monetarily for damages to Sound Around. Even with legitimate businesses in China, it can be

extremely difficult to collect on a judgement.  In *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp.

2d 395, 412, (S.D.N.Y. January 18, 2011), Judge Gardephe found that the irreparable injury

standard was met where defendant did not rebuff evidence it would be unable to pay a damages

award.  Specifically, Judge Gardephe stated:

> Although Tecnimed has not demonstrated that it will suffer irreparable injury in
> the form of lost goodwill, it has shown that (1) it faces a risk of loss that will be
> difficult to quantify; and (2) [defendant's] insolvency creates a significant risk
> that it will be unable to pay money damages at the conclusion of this litigation.
> Under <u>Salinger</u>, this showing is adequate to demonstrate a risk of irreparable
> injury.

Defendants' history of shady business dealings, including false representations to the U.S. Patent

Office, make them analogous to an insolvent company. Recovery of financial compensation from

them at the end of this litigation is doubtful, most likely impossible.

2.  **Plaintiff Has a Likelihood of Success on the Merits for its Claims of No Patent
Infringement and That the '810 Patent is Invalid And/Or Unenforceable**

"To establish a likelihood of success on the merits, a plaintiff 'need not show that success

is an absolute certainty. He need only make a showing that the probability of his prevailing is

better than fifty percent.'" *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y.

2018) (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)). "Further, Plaintiffs need not

demonstrate a likelihood of success on the merits of every claim—rather, they need only 'show a

likelihood of success on the merits of at least one of [their] claims.'" *725 Eatery Corp. v. City of

New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) (quoting *L.V.M. v. Lloyd*, 318 F. Supp. 3d

601, 618 (S.D.N.Y. 2018)); see also *Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484,

487 (S.D.N.Y. 1997) ("Where a plaintiff seeks a preliminary injunction and asserts multiple

claims upon which the relief may be granted, the plaintiff need only establish a likelihood of

success on the merits on one of the claims.") (citing *Girls Clubs of Am., Inc. v. Boys Clubs of

Am., Inc.*, 683 F. Supp. 50, 52 (S.D.N.Y.), *aff'd*, 859 F.2d 148 (2d Cir. 1988)).

     The information contained in the Declarations of (1) Jerry Brach and (2) Fengli Lv

("Helen") of Goldenhot show that Defendants defrauded the U.S. Patent Office in securing

approval of the '810 Patent. Then, Defendants defrauded Amazon and Sound Around by

submitting a patent infringement complaint based upon the fraudulently procured patent.

     Defendants Wu and Keenray intentionally misled the Patent Office, claiming that Wu is

the "inventor" of the design shown in the '810 Patent, and they also knowingly failed to disclose

relevant and material prior art that would have precluded issuance of the patent. These are acts of

egregious inequitable conduct and renders the patent unenforceable. See *Rohm & Haas Co. v.

Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed.Cir.1983) ("[T]here is no room to argue that

submission of false affidavits is not material"); *Therasense Inc. v. Becton*, 649 F.3d 1276, 99

U.S.P.Q.2d 1065 (Fed. Cir. 2011) ("When the patentee has engaged in affirmative acts of

egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is

material.")

     Goldenhot has submitted proof that it originated the subject product design and

introduced it into the market at least as early as August 3, 2020. (Helen Decl., at Par. 9 and

Exhibit B).  Keenray is even a customer of Goldenhot, including the subject towel warmer

product. (Id., at Par. 7). Therefore, Wu could not have been the inventor of a product already

developed by Goldenhot, and Wu knew of Goldenhot's design because Wu is a part-owner of

Keenray. (See Brach Decl, at Par. 30)("She is co-owner of Shenzen Keenray Innovations
Limited…").

The U.S. Patent Law is clear that only a true and correct inventor is permitted to file an
application to secure a patent. *Inter alia* 35 U.S.C. 101, 102(a) and 102(f). Knowingly filing for
a patent, when you are not an inventor, results in the ensuing patent being "invalid" and
"unenforceable," and any patent rights in the invention, as a matter of black letter law, cannot be
owned by Wu or Keenray.

Therefore, Sound Around has met its burden of showing that it has a likelihood of
prevailing on the merits of its Declaratory Judgement claim of no patent infringement, including
that the '810 Patent is invalid and/or unenforceable.


**2A.  Plaintiff has shown a substantial likelihood of success regarding its unfair
competition and tortious interference claims (Claims II and III of the Complaint)**

Plaintiff is likely to succeed on its unfair competition and tortious interference claims.
It is a violation of the U.S. Lanham Act to falsely allege patent infringement. See *Zenith Elecs.
Corp. v. Exzec. Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999)(holding that a bad faith
infringement allegation supports a Lanham Act unfair competition cause of action). Defendants
have leveled bad faith infringement allegations against Sound Around to Amazon, even when it
is clear that the Keenray Defendants knew that the '810 Patent is invalid and/or unenforceable.
At minimum, Defendants know that Wu is not the inventor of the subject design. Defendants
know this because they purchased product encompassing the claimed design from Goldenhot
before they filed for patent rights in the design. (See Decl. of Helen, at Pars. 6-10).

Therefore, Defendants knew that the '810 Patent was procured through fraud and,
consequently, that the allegation that Sound Around infringed upon the illegitimate '810 Patent

was also fraudulent. The Patent was *void ab initio* because it was not sought by the actual inventor of the design. Wielding the worthless "Patent" against Sound Around also clearly amounts to tortious interference with Sound Around's relationship with Amazon and Amazon's customers.

### 3.  The Equities Clearly Balance in Favor of Plaintiff, Warranting the Issuance of a Preliminary Injunction.

"When assessing the balance of hardships between the parties, '[t]he relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Pearson Educ., Inc.*, 2019 WL 1949820, at *6 (quoting *Salinger*, 607 F.3d at 81).

In this case, a preliminary injunction and temporary restraining order are necessary to prevent Sound Around from potentially losing all of its selling rights on Amazon. (See Brach Decl., at Par. 10).  In the absence of an order that Defendant Keenray must retract its claims of patent infringement to Amazon, Sound Around faces a likely and grievous threat to its business, not being able to reach Amazon's customers for <u>any</u> of Sound Around's thousands of products. (See Brach Decl., at Pars. 3 and 5).

The Keenray Defendants can appear in this action, file a counterclaim, and present the claim of patent infringement to the Court.  Should Keenray prevail in this Court, an award of monetary damages will be fashioned against Sound Around, and the Court will issue an appropriate injunction against Sound Around.

Only in this Court will Sound Around's Declaratory Judgement claims be entertained. Amazon presumes that Keenray's patent is valid and enforceable, and Amazon has no forum for considering the overwhelming evidence that Wu and Keenray committed fraud upon the Patent Office.

Therefore, Defendants risk virtually nothing should the Court enter a preliminary

injunction and temporary restraining order.  In comparison, Sound Around's entire business on

Amazon is at stake, which it has taken years to develop, including opening and maintaining

several Amazon "storefronts."

**4. The Public Interest Will Not Be Harmed by the Issuance of the Requested Injunction**

In *Home It, supra*, Hon. Judge Chen explained:

> The Court finds that "the public interest is served by such an injunction against
> the assertion of what at this preliminary stage clearly and convincingly appears to
> be wrongful and fraudulent claims to a right to a trademark." *Country Fare LLC*,
> 2011 WL 2222315, at *10; cf. N.Y.C. *Triathlon, LLC v. NYC Triathlon Club,
> Inc.*, 704 F. Supp. 2d 305, 344  (S.D.N.Y. 2010).

In that case, defendant had submitted a claim of trademark infringement against the plaintiff to

Amazon; and plaintiff alleged to this Court that defendant had obtained a trademark registration

for plaintiff's trademark through fraud on the U.S. Trademark Office, including by using one of

plaintiff's own photographs for one of plaintiff's products.

The public has an interested in legitimate competition and in preventing fraud on

government offices. There is substantial evidence that Defendants Wu and Keenray committed

fraud on the U.S. Patent Office, including by falsely alleging that Wu is the inventor of the

subject design.

To the extent that Defendant Keenray has legitimate patent rights, and a legitimate patent

infringement case to make against Sound Around, Keenray can counterclaim in this Court and

receive compensation and an injunction pursuant to the Patent Laws.  Keenray has exploited a

hole in Amazon's enforcement of IP rights on its platform, Amazon assumes that all patents are

legitimate and enforceable.  The public will not be harmed by a temporary return to the *status*

*quo ante*, which would allow competition between Sound Around and Keenray's products, and Keenray would still be entitled to come forward and claim Patent infringement in this Court, to the extent it can overcome the overwhelming evidence that its patent was obtained through fraud.

Until Keenray proves patent infringement in a District Court, the public is best served by competition. Sound Around and Keenray should continue to compete in the marketplace. This is contrary to Keenray's apparent gripe against Sound Around, that Sound Around's price for its towel warmer product is too good: "Your sell price $80 is way too low, how do you make money by this business?" (Brach Decl., at Par. 24).

## II.        Security

Under *Fed*. R. Civ. P. 65(c), district courts have "wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm." *Doctor's Associates, Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir.1996). No one will suffer any actual harm in stopping Defendants' fraud and their interference with Plaintiff's business through Amazon. See also *Rex Medical L.P.*, 754 F. Supp. 2d 616, 626 ("It is well-settled that a district court has wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm [to the non-movant].") (internal quotation marks and citations omitted).

Likewise, the Defendants cannot credibly argue that any bond should be necessary in this case, as the weight of the evidence is that Defendants committed fraud on the Patent Office and then on Amazon and Sound Around.

Sound Around's likelihood of success here is overwhelming, and no more than a $100 bond should be required.

## CONCLUSION

Based on the foregoing, Sound Around respectfully requests that the Court grant its application for a temporary restraining order and preliminary injunction, as it is likely to succeed on the merits its claims, and will suffer irreparable harm should the preliminary injunction and temporary restraining order not be granted.

Date: New York, New York
   November 14, 2022

Respectfully submitted,

**OSTROLENK FABER LLP**

/s/ Max Moskowitz
Max Moskowitz
Ariel Peikes
845 Third Avenue
New York, New York 10022
Telephone: (212) 596-0500
Facsimile: (212) 382-0888
mmoskowitz@ostrolenk.com
apeikes@ostrolenk.com

*Attorneys for Plaintiff*