UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SOUND AROUND INC., d/b/a PYLE USA,

                    Plaintiff,

         v.                                                **MEMORANDUM & ORDER**
                                                           22-CV-06943 (HG)
SHENZHEN KEENRAY INNOVATIONS
LIMITED, DANXIA WU, WENG FENG
PENG (a/k/a FENSON PENG), and
AMAZON.COM, INC.,

                    Defendants.

**HECTOR GONZALEZ**, United States District Judge:

        Plaintiff Sound Around Inc. seeks entry of a preliminary injunction against Defendants

Shenzhen Keenray Innovations Limited ("Keenray"), Danxia Wu, and Weng Feng Peng (a/k/a

Fenson Peng) (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 65.  For

the reasons stated herein, the Court grants in part and denies in part Plaintiff's motion for entry

of a preliminary injunction against Defendants.

## BACKGROUND

        Pursuant to Federal Rule of Civil Procedure 52(a)(2), the Court makes the following

findings of fact to support its partial grant of a preliminary injunction against Defendants.

Plaintiff is a New York corporation that imports and sells electronic products, and markets and

sells its products both on its own website and the websites operated by third-party

marketplaces—specifically, Amazon, Inc. ("Amazon"), Walmart Inc. ("Walmart") and eBay Inc.

("eBay").  Declaration of Jerry Brach, ECF No. 10 ¶¶ 2–3, 5.  Plaintiff does not manufacture

products but instead purchases, brands and sells the purchased products.  *Id.* ¶ 4.  One product

that Plaintiff sells through its brand Serenelife is a towel warmer ("Subject Towel Warmer").  *Id.*

¶ 6.  On or before early 2021, Plaintiff purchased the Subject Towel Warmer from a China-based

company called Dongguan Goldenhot Plastic & Hardware Products Co., Ltd. ("Goldenhot") and

began selling it on Amazon, Walmart, and eBay.  *Id.* ¶ 5; Declaration of Fengli Lv ("Helen")

Declaration, ECF No. 11 ¶¶ 1, 3, 7.

Goldenhot applied for both a design and utility model U.S. patent on a towel warmer

product in 2018.  ECF No. 11 ¶ 4.  In 2019, Goldenhot redesigned the product and created the

Subject Towel Warmer.  *Id. ¶* 6.  On August 3, 2020, Goldenhot sold the Subject Towel Warmer

to Defendant Keenray.  *Id.* ¶ 8.  On November 10, 2020, a principal of Keenray, Defendant

Danxia Wu, filed a U.S. patent (the "810 Patent") for the Subject Towel Warmer and assigned

patent rights to Keenray without Goldenhot's knowledge.  *Id.* ¶ 10.  In a declaration filed in

connection with Keenray's application for the 810 Patent, Defendant Wu declared that she is the

single inventor of the Subject Towel Warmer.  ECF No. 10-5 at 4.

In September 2022, Defendant Keenray contacted Amazon and demanded that Amazon

delist the Subject Towel Warmer alleging that it owns the patent to the towel warmer design and

that Plaintiff, and other sellers, were infringing on the 810 Patent by selling the Subject Towel

Warmer.  ECF No. 10 ¶ 8.  On October 17, 2022, Amazon delisted the Subject Towel Warmer

and sent Plaintiff a notice informing it that additional complaints could lead to a total ban from

selling products with Amazon.  *Id.* ¶ 10 ("If we receive more complaints about your listings, we

may take further action up to[,] and including[,] not allowing you to sell to Amazon."  (emphasis

omitted)).

In November 2022, Plaintiff emailed a Goldenhot employee, Helen, who affirmed that

Goldenhot was the inventor of the Subject Towel Warmer and provided Plaintiff with the

purchase and sales contract concerning the Subject Towel Warmer between Goldenhot and

Keenray.  ECF No. 11-2 (Email Exchange between Goldenhot and Plaintiff, dated November 4,

2022).  Both Goldenhot and Plaintiff also communicated directly with employees at Keenray by

email, including Defendant Peng, who stated that Keenray was unwilling to retract the

infringement complaint it made with Amazon unless Plaintiff increased the price of the Subject

Towel Warmer.  ECF No. 11 ¶ 14; ECF No. 10 ¶ 24 ("Hello Ziggy, Your sell price $80 is way

too low, how do you make money by this business?  We think it is not [sic] unfair for the market.

Otherwise, you need to pay for the authorization, or buy products from us if possible.").

Moreover, Plaintiff's counsel made attempts to reach Defendants' U.S.-based patent counsel to

no avail.  ECF No. 10 ¶ 28.

Plaintiff's President, Jerry Brach, alleges that Defendants' refusal to retract their patent

infringement complaint with Amazon and the delisting of the Subject Towel Warmer have

deprived Plaintiff of sales and damaged its relationship with Amazon.  *Id.* ¶ 39.

## PROCEDURAL HISTORY

On November 14, 2022, Plaintiff filed the instant action against Defendants and

Amazon.[1]  ECF No. 1.  Plaintiff seeks a declaratory judgment that it is not infringing on the 810

Patent and asserts the following claims:  (i) unfair competition in violation of the Lanham Act

pursuant to 15 U.S.C. § 1125(a)(1)(B) and New York common law, and (ii) tortious interference

with existing and potential business relationships under New York common law.  *Id.* ¶¶ 57–84.

Plaintiff shortly thereafter filed a motion for a temporary restraining order ("TRO") and

preliminary injunction against Defendants.  ECF No. 12.  On November 16, 2022, the Court

denied Plaintiff's motion for a TRO and issued an order to show cause setting a hearing for

---

[1]     On November 21, 2022, Amazon was voluntarily dismissed from the action.  ECF No.
20.

3

Plaintiff's motion for a preliminary injunction.  ECF No. 16.  Plaintiff seeks a preliminary

injunction enjoining Defendants to:  (i) rescind their allegations of infringement against Plaintiff,

and to take the necessary steps to ensure that Amazon restores the Subject Towel Warmer to its

website as soon as possible, and (ii) refrain from filing or otherwise communicating any

allegations of infringement by Plaintiff to any third party for the duration of the instant action

relative to the Subject Towel Warmer.  ECF No. 12 at 2–3.  On December 9, 2022, the Court

held a preliminary injunction hearing.  Plaintiff was present, Defendants did not appear.  *See*

Minute Entry for Proceedings, dated December 9, 2022.

At the hearing, Plaintiff informed the Court that Amazon restored the Subject Towel

Warmer listing.  *Id.*  In light of that development, Plaintiff's request that Defendants take steps to

ensure that Amazon restores the Subject Towel Warmer to its website is moot.  The Court will

therefore only consider Plaintiff's second request:  whether to enjoin Defendants to refrain from

filing or otherwise communicating any allegations of infringement by Plaintiff to any third party

for the duration of the instant action relative to the Subject Towel Warmer.  ECF No. 12 at 2–3.

## LEGAL STANDARD

A party seeking a preliminary injunction must establish, by clear and convincing

evidence:  "(1) a likelihood of success on the merits[;] (2) that the plaintiff is likely to suffer

irreparable injury in the absence of an injunction[;] (3) that the balance of hardships tips in the

plaintiff's favor[;] and (4) that the public interest would not be disserved by the issuance of the

injunction."  *Capstone Logistics Holdings, Inc. v. Navarrete*, 736 F. App'x 25, 25–26 (2d Cir.

2018) (internal quotation marks omitted).  "A preliminary injunction is an extraordinary and

drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the

burden of persuasion."  *Id.* at 26 (quoting *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir.

2007)) (internal quotation marks omitted) (emphasis in original).  "The purpose of such interim

equitable relief is not to conclusively determine the rights of the parties but to balance the

equities as the litigation moves forward."  *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct.

2080, 2087 (2017) (citations omitted); *see also Am. Civ. Liberties Union v. Clapper*, 804 F.3d

617, 622 (2d Cir. 2015) ("A preliminary injunction is an equitable remedy and an act of

discretion by the court.").

## DISCUSSION

### I.    Irreparable Harm

"The showing of irreparable harm is [p]erhaps the single most important prerequisite

for the issuance of a preliminary injunction, and the moving party must show that injury is likely

before the other requirements for an injunction will be considered."  *Home It, Inc. v. Wen*, No.

19-cv-7070, 2020 WL 353098, at *3 (E.D.N.Y. Jan. 21, 2020) (alteration in original) (internal

quotation marks omitted).  To show irreparable harm the moving party must establish that "there

is a continuing harm which cannot be adequately redressed by final relief on the merits and for

which money damages cannot provide adequate compensation."  *Id.* (internal quotation marks

omitted).

Plaintiff argues that it will suffer irreparable harm because Plaintiff's accusations of

patent infringement could harm its standing with Amazon, which is the "lifeline of its business"

as well as its relationships with other third-party platforms such as eBay and Walmart.  ECF No.

9 at 3, 7.  Defendants succeeded in removing the Subject Towel Warmer product from Plaintiff's

Amazon storefront on the basis of supposedly fraudulent allegations and as a result, Amazon

issued a warning to Plaintiff about potentially banning Plaintiff from selling on its platform.  *Id.*

at 6.  Defendants could make similar accusations again, and not only with Amazon but also with

eBay and Walmart, the consequences of which could be severe for Plaintiff's business and reputation. "The loss of reputation and goodwill constitutes irreparable harm." *Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 44 (2d Cir. 2020); *see also Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 175 (S.D.N.Y. 2022) ("[D]epriving a party of the opportunity to sell an entire line of merchandise[] may cause that party to incur injury to its goodwill and reputation as a dependable distributor. This reputational damage is difficult to repair because even in the event that [plaintiff] finds an alternative supplier, customers may . . . refuse to return to [plaintiff], because of [its] lack of dependability in supplying its product." (citations and internal quotation marks omitted)). Here, should Defendants file additional patent infringement complaints, Plaintiff is at risk of losing the ability to sell its SereneLife branded products including the Subject Towel Warmer on Amazon and other third-party platforms. This would damage Plaintiff's reputation and relationships with online retailers as well as impact Plaintiff's sales and revenue. Accordingly, the Court finds that Plaintiff has established irreparable harm. *See Country Fare LLC v. Lucerne Farms*, No. 11-cv-722, 2011 WL 2222315, at *5 (D. Conn. June 7, 2011) ("It is well recognized that the inability of a party to supply its products to customers as a result of a dispute will often result in a loss of goodwill sufficient to establish irreparable harm.").

## II.     Likelihood of Success on the Merits

"To establish a likelihood of success on the merits, a plaintiff need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent." *Home It*, 2020 WL 353098, at *5 (internal quotation marks omitted). Plaintiff does not need to establish likelihood of success on all of its claims, but on at least one of its claims. *Id.* (citing *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y.

2019)).  Plaintiff seeks a declaratory judgment that it is not infringing on the 810 Patent and

asserts unfair competition and tortious interference claims.  ECF No. 1 ¶¶ 57–84.  The Court

finds that Plaintiff has demonstrated a likelihood of success on the merits of Plaintiff's first and

third claims.

As to the first claim, federal courts "may declare the rights and other legal relations of

any interested party seeking such declaration, whether or not further relief is or could be sought"

in a case of actual controversy within their jurisdiction.  28 U.S.C. § 2201(a).  Plaintiff has

sufficiently demonstrated, at this stage of the litigation, that:  (i) Goldenhot created the Subject

Towel Warmer, ECF No. 11 ¶ 6; (ii) Goldenhot sold Plaintiff the Subject Towel Warmer, *id.* ¶¶

1, 3, 7; (iii) Defendant Wu's declaration filed in connection with the application for the 810

Patent affirming that she is the single inventor of the Subject Towel Warmer is likely fraudulent,

ECF No. 10-5 at 4; and (iv) Defendants' complaint to Amazon that Plaintiff is infringing on the

810 Patent is therefore inaccurate.  Thus, Plaintiff is likely to succeed on the merits of its claim

for declaratory judgment.

With respect to the third claim, "[u]nder New York law, to state a claim for tortious

interference with prospective economic advantage, the plaintiff must allege that:  '(1) it had a

business relationship with a third party; (2) the defendant knew of that relationship and

intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest,

unfair, or improper means; and (4) the defendant's interference caused injury to the

relationship.'"  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).  Plaintiff is

likely, based on the evidence at this preliminary stage, to prevail on its tortious interference

claim because:  (i) Plaintiff had a relationship with third parties including Amazon, eBay and

Walmart, ECF No. 10 ¶¶ 2–3, 5; (ii) Defendants knew of at least Plaintiff's relationship with

Amazon and intentionally interfered with it by lodging a patent infringement complaint, *id.* ¶ 8;

(iii) Defendants allegedly defrauded the U.S. Patent Office in securing approval of the 810 Patent

and used that patent dishonestly, ECF No. 9 at 12–13; ECF No. 10-5 at 4; and (iv) Defendants'

interference caused injury to Plaintiff's relationship with Amazon, which issued a warning to

Plaintiff.  Such warnings could lead to suspension of Plaintiff's online storefront and irreparably

damage Plaintiff's relationship with Amazon.  ECF No. 10 ¶ 10.  Accordingly, the Court finds

that Plaintiff has sufficiently demonstrated a likelihood of success.

### III.     Balance of Hardships

"When assessing the balance of hardships between the parties, '[t]he relevant harm is the

harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final

adjudication, whether by damages or a permanent injunction.'" *Home It*, 2020 WL 353098, at

*6 (quoting *Pearson Educ., Inc.*, *v. Labos*, No. 19-cv-487, 2019 WL 1949820, at *5 (S.D.N.Y.

Apr. 23, 2019)).  Given that Plaintiff has sufficiently demonstrated:  (i) irreparable harm by

virtue of Defendants' allegations that Plaintiff infringed on the 810 Patent, evidence of fraud, and

potential significant consequences to Plaintiff's business and sales, and (ii) likelihood of success

on the merits, the Court finds that Plaintiff has met its burden to establish hardship.  *See id.*  As a

result of Defendants' failure to appear for the preliminary injunction hearing, the Court did not

receive any evidence from Defendants.  Nevertheless, the Court finds that Defendants would be

unable to demonstrate any hardship as a result of a preliminary injunction that prevents

Defendants from interfering with Plaintiff's business using the 810 Patent, which was "more

likely than not[] obtained fraudulently." *Id.*  Accordingly, the Court finds that Plaintiff has

demonstrated that the balance of hardships weighs in its favor.

### IV.    Public Interest

"The consideration of the public interest is designed to 'ensure that the public interest would not be disserved' by the issuance of a preliminary injunction." *Hope Organics LLC v. Preggo Leggings LLC*, No. 21-cv-2416, 2021 WL 5919367, at *13 (S.D.N.Y. Dec. 15, 2021) (quoting *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)).  The public interest is served by granting an injunction against, what appears "clearly and convincingly" to be at this preliminary stage, a fraudulent claim to a patent.  *See Country Fare*, 2011 WL 2222315, at *10 (finding that the public interest was served by issuing an injunction against "fraudulent claims to a right to a trademark").

### V.    Preliminary Injunction Bond

Pursuant to Federal Rule of Civil Procedure 65(c), no preliminary injunction shall issue unless "the movant gives security" in order to ensure that any party who is found to have been wrongfully enjoined may recover any costs and damages incurred by the injunction.  It is "within the discretion of the district court to decide that, under the circumstances, no security [is] required[.]" *Home It*, 2020 WL 353098, at *6 (quoting *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004)) (alterations in original).  The Court waives the bond requirement because neither the Court nor Defendants (who have so far failed to appear in the action) have identified any damages or costs that Defendants will suffer as a result of the injunction.  *Id.*; *see also Rex Med. L.P.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010) ("It is well-settled that a district court has wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm [to the non-movant]." (citations and internal quotation marks omitted)).

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for a preliminary injunction is granted in

part and denied in part.  The Court will issue the preliminary injunction order as a separate

docket entry.

SO ORDERED.

Dated:  Brooklyn, New York
        December 18, 2022


                                        */s/ Hector Gonzalez*
                                        HECTOR GONZALEZ
                                        United States District Judge

10