UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SOUND AROUND INC., d/b/a PYLE USA,

                    Plaintiff,

          v.                                                 **MEMORANDUM & ORDER**
                                                             22-CV-06943 (HG)
SHENZHEN KEENRAY INNOVATIONS
LIMITED, DANXIA WU, and WENG FENG
PENG (a/k/a FENSON PENG),

                    Defendants.

**HECTOR GONZALEZ**, United States District Judge:

          Plaintiff Sound Around Inc. ("Sound Around") brings this action against Defendants

Shenzhen Keenray Innovations Limited ("Keenray China"), Danxia Wu, and Weng Feng Peng,

seeking a declaratory judgment and asserting claims of unfair competition, and tortious

interference.  *See generally* ECF No. 1.  Presently before the Court is Defendants Danxia Wu

and Weng Feng Peng's (together, "Defendants") motion to dismiss for lack of personal

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  For the reasons set forth

below, Defendants' motion to dismiss is granted.

## BACKGROUND

          The Court assumes familiarity with the background of this case, *see Sound Around Inc. v.*

*Shenzhen Keenray Innovations Ltd.,* No. 22-cv-6943, 2022 WL 17811475 (E.D.N.Y. Dec. 18,

2022), and only briefly discusses the relevant facts and procedural history.

          Plaintiff Sound Around is a New York corporation that imports and sells electronic

products, and markets and sells its products both on its own website and the websites operated by

third-party marketplaces including Amazon, Inc. ("Amazon").  ECF No. 1 ¶¶ 3, 11, 26.  One

product that Sound Around sells through its brand Serenelife is a towel warmer ("Subject Towel

Warmer"). *Id.* ¶ 19.  On or before early 2021, Sound Around purchased the Subject Towel

Warmer from China-based company Dongguan Goldenhot Plastic & Hardware Products Co.,

Ltd. ("Goldenhot") and began selling it on Amazon. *Id.* ¶ 26.

Goldenhot applied for both a design and utility model U.S. patent on a towel warmer

product in 2018. *Id.* ¶¶ 19–21.  In 2019, Goldenhot redesigned the product and created the

Subject Towel Warmer.  *Id.* ¶ 23.  On August 3, 2020, Goldenhot sold the Subject Towel

Warmer to Keenray China.  *Id.* ¶ 24.  Plaintiff alleges that on November 10, 2020, a principal of

Keenray China, Defendant Danxia Wu, filed a U.S. patent (the "810 Patent") for the Subject

Towel Warmer and assigned patent rights to Keenray China without Goldenhot's knowledge.  *Id.*

¶ 25.

Sometime in 2022, Keenray China contacted Amazon and demanded that Amazon delist

the Subject Towel Warmer alleging that it owns the patent to the towel warmer design and that

Plaintiff, and other sellers, were infringing on the 810 Patent by selling the Subject Towel

Warmer.  *Id.* ¶¶ 39–41.  On October 17, 2022, Amazon delisted the Subject Towel Warmer and

sent Plaintiff a notice informing it that additional complaints could lead to a total ban from

selling products with Amazon.  *Id.* ¶ 43.

Both Goldenhot and Plaintiff communicated directly with employees at Keenray China

by email, including Defendant Peng, the owner of Keenray China, who stated that Keenray

China was unwilling to retract the infringement complaint it made with Amazon unless Plaintiff

increased the price of the Subject Towel Warmer.  *Id.* ¶¶ 51–52 ("Your sell price $80 is way too

low, how do you make money by this business?  We think it is not [sic] unfair for the market.

Otherwise, you need to pay for the authorization, or buy products from us if possible.").

On November 14, 2022, Sound Around filed the instant action seeking a declaratory judgment that Keenray China does not own the 810 Patent and asserting claims of unfair competition and tortious interference as related to the 810 Patent and Keenray China's complaints to Amazon.  Sound Around also sought a preliminary injunction ordering Keenray China, Defendant Wu, and Defendant Peng to refrain from filing or otherwise communicating any allegations of patent infringement by Sound Around to any third party for the duration of the instant litigation relative to the Subject Towel Warmer.  ECF No. 9.  The preliminary injunction was granted on December 18, 2022.  ECF No. 23.

On February 9, 2023, Defendants filed a motion to dismiss Plaintiff's complaint against them for lack of personal jurisdiction.  ECF No. 39.  On March 2, 2023, Plaintiff filed its opposition and on March 9, 2023, Defendants filed a reply.  ECF Nos. 40, 41.

## LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction is reviewed under the same legal standard as a motion to dismiss for improper venue.  *Precision Wellness LLC v. Demetech Corp.*, No. 21-cv-1244, 2022 WL 970773, at *2 (E.D.N.Y. Mar. 30, 2022).[1]  In both circumstances, the plaintiff bears the burden of demonstrating that venue and jurisdiction are proper.  *Id*.  The Court "may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials."  *Id.* at *3.

"The showing a plaintiff must make to meet this burden is governed by a sliding scale, which varies depending on the procedural posture of the litigation."  *Precision*, 2022 WL

---

[1]     Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

970773, at *2.  "Absent a full-blown evidentiary hearing," plaintiff "need make only a prima

facie showing of jurisdiction through its own affidavits and supporting materials."  *DeLorenzo v.*

*Ricketts & Assocs., Ltd.*, No. 15-cv-2506, 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017).

At the motion to dismiss stage, "although pleadings and affidavits are construed in the light most

favorable to the plaintiff, conclusory non-fact-specific jurisdictional allegations or a legal

conclusion couched as a factual allegation will not establish a prima facie showing of

jurisdiction."  *Id.*  "The allegations in the complaint are presumed true only to the extent they are

uncontroverted by the defendant's affidavits."  *Precision*, 2022 WL 970773, at *3.

**DISCUSSION**

In determining whether there is personal jurisdiction over a defendant, the Court must

first look to state law—in this case, New York law.  *Precision*, 2022 WL 970773, at *3 ("A

district court's personal jurisdiction is determined by the law of the state in which the court is

located.").  After first determining whether New York's long-arm statute permits the Court's

exercise of personal jurisdiction—general or specific—over Defendants, the Court must next

decide whether that jurisdiction is permissible under the Due Process Clause of the Fourteenth

Amendment.  *Id*.

For the reasons set forth below, the Court finds that:  (i) it may not exercise personal

jurisdiction over Defendant Wu, and (ii) although it may exercise specific personal jurisdiction

against Defendant Peng pursuant to an agency theory of personal jurisdiction, doing so would

violate Defendant Peng's due process rights.

### I.      General Jurisdiction

"There are two types of personal jurisdiction:  specific and general."  *Sonera Holding*

*B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).  "Under [New York Civil

Practice Law & Rules ("CPLR")] § 301, a court has general personal jurisdiction over an

4

individual if his conduct with New York is so continuous and systematic as to render [he or she] essentially at home in the forum state.  To determine whether a defendant does business in the state, the Court must be able to say from the facts that the defendant is present in the State not occasionally or casually, but with a fair measure of permanence and continuity." *Wallace Church & Co. Inc. v. Wyattzier, LLC*, No. 20-cv-1914, 2020 WL 4369850, at *4 (S.D.N.Y. July 30, 2020).  Plaintiff does not address Defendants' contention that Defendants are not subject to general jurisdiction in New York.  *See generally* ECF No. 40.  Given that "the burden rests with the plaintiff to demonstrate that venue and jurisdiction are proper," the Court limits discussion to whether Defendants are subject to specific jurisdiction pursuant to CPLR §§ 302(a)(1) and 302(a)(3)(ii).[2]  *Precision*, 2022 WL 970773, at *2.

## II.     Specific Jurisdiction

CPLR § 302(a) "permits courts to exercise personal jurisdiction over a non-domiciliary where the cause of action arises from any of the acts enumerated in the statute."  *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 333 (E.D.N.Y. 2021).  CPLR § 302(a) specifically provides that:

> [a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or *through an agent*:
>    1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .
>    3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he . . .
>         (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

---

[2]     Plaintiff does not reference any specific section of CPLR § 302 in its complaint but emphasizes and highlights CPLR §§ 302(a)(1) and 302(a)(3)(ii) in its opposition.  ECF No. 40 at 10.  Accordingly, the Court will consider whether Defendants are subject to personal jurisdiction pursuant to these sections.

CPLR § 302(a) (emphasis added).

As an initial matter, the Court finds that it is permitted to consider exercising personal jurisdiction over Defendants pursuant to either CPLR § 302(a)(1) or § 302(a)(3)(ii), including based on an agency theory.  Although Plaintiff did not specifically reference either CPLR provision in its complaint, Plaintiff alleged that the Court may exercise personal jurisdiction over Defendants because (i) "they regularly conduct business and offer their services in this judicial district"; (ii) "a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district"; and (iii) "Defendants' wrongful acts and injury to Plaintiff occurred in this judicial district."  ECF No. 1 ¶ 10.  These allegations were clearly intended to refer to the corresponding provisions of CPLR § 302.

The Court recognizes that Plaintiff did not expressly raise an agency theory of jurisdiction until Plaintiff filed its opposition to Defendants' motion to dismiss, *see* ECF No. 40 at 12–14, and, typically, a "plaintiff[] cannot use [its] opposition to the motion to dismiss to raise new claims or arguments," *Kiryas Joel All. v. Vill. of Kiryas Joel*, No. 11-cv-3982, 2011 WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011).  However, CPLR § 302(a)(3) specifically authorizes an agency theory of jurisdiction by stating that "a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or *through an agent* . . . commits a tortious act without the state causing injury to person or property within the state."  CPLR § 302(a)(3) (emphasis added).  The Court therefore finds that Plaintiff's complaint, by referring to the basis for jurisdiction established by CPLR § 302(a)(3), sufficiently invoked an agency basis for jurisdiction.

Defendants argue that this Court lacks personal jurisdiction because Defendants are Chinese citizens residing in China who have no connection to New York.  ECF No. 39-1 at 2.

Defendants further contend that they "have no minimum contact[s] with this judicial district." *Id.* The Court will therefore address not only whether it has statutory personal jurisdiction over Defendants based on CPLR § 302, but also whether exercising that jurisdiction would be consistent with Defendants' constitutional right to due process.

    A. *The Court Lacks Personal Jurisdiction Over Defendants Under CPLR § 302(a)(1)*

    "Section 302(a)(1) has two prongs: (1) the defendant must have transacted business within the state, either itself or through an agent, and (2) the cause of action must arise from that business activity. . . . In determining whether a defendant is purposefully transacting business in New York, a court must look at the quality of the defendant's New York contacts." *Grp. One Ltd.*, 523 F. Supp. 3d at 335. Defendants' lack of physical presence in New York "is not dispositive of whether [they] transact[] business within the state, so long as [their] activities within the state were purposeful and there is a substantial relationship between the transaction and the claim asserted" by Plaintiff. *Id.* Here, other than an allegation that Defendant Wu filed a patent application with the U.S. Patent Office, Plaintiff does not otherwise allege that Defendants transacted business "to supply goods or services" within New York. *See Bonhac World Corp. v. Mellin Works LLC*, No. 21-cv-9239, 2023 WL 346950, at *3 (S.D.N.Y. Jan. 20, 2023) (finding in unfair competition and tortious interference action that for purposes of CPLR § 302(a)(1) it is "insufficient to allege that a defendant conducts business through an interactive third-party website" and "it is also insufficient to allege that a defendant merely offers a product outside New York for sale in New York if no sale takes place in New York or to a New York resident, even if the defendant operates a commercial website capable of reaching customers in New York"). Accordingly, Plaintiff fails to meet its burden of establishing personal jurisdiction pursuant to CPLR § 302(a)(1).

B.  *The Court Lacks Personal Jurisdiction Over Defendants Under CPLR § 302(a)(3)(ii)
for Defendants' Personal Actions*

The New York Court of Appeals has established five elements that must be satisfied to

establish specific jurisdiction under CPLR § 302(a)(3)(ii):  (1) the defendant must have

committed a tortious act outside of New York; (2) the cause of action at issue must have arisen

as a result of this act; (3) this act must have caused an injury to a person or property in New

York; (4) the defendant expected or should have reasonably expected the act to have

consequences in New York; and (5) the defendant derived substantial revenue from either

interstate or international commerce.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d

295, 302 (2011); *see also Carson Optical, Inc. v. RQ Innovasion Inc.*, No. 16-cv-1157, 2020 WL

1516394, at *5 (E.D.N.Y. Mar. 30, 2020) (applying *Penguin* test).  The Court concludes that

Plaintiff has failed to establish these elements.

With respect to the first and second elements—that the Defendants committed a tortious

act outside of New York resulting in Plaintiff's cause of action—Plaintiff alleges that "Keenray

[China] refuses to withdraw its infringement complaint to Amazon unless Sound Around agrees

to sell the [Subject] Towel Warmer at a price approved by Mr. Peng."  ECF No. 1 ¶ 55.  Plaintiff

further alleges that the filing of a fraudulent patent infringement complaint with Amazon and the

refusal to withdraw the complaint supports causes of action for unfair competition and tortious

interference with existing and potential business relationships.  *Id.* ¶¶ 67–84.  Although

Defendant Wu allegedly listed herself as the sole inventor of the Subject Towel Warmer in the

810 Patent application, the Court finds that Plaintiff has not made a prima facie showing that *she*

committed a tortious act giving rise to the instant action.  Plaintiff does not own the design

associated with the 810 Patent.  Keenray China's alleged decision to file a complaint with

Amazon and refusal to withdraw the claim unless Plaintiff agreed to sell the Subject Towel

Warm at a price approved by Defendant Peng is what gives rise to the unfair competition and tortious interference causes of action.  Accordingly, Keenray China and Defendant Peng committed tortious acts giving rise to the instant action, but Defendant Wu did not.  As Plaintiff fails to establish the first and second elements of the test as set forth in *Penguin* against Defendant Wu, the Court finds that Plaintiff has failed to meet its burden to establish personal jurisdiction against Defendant Wu pursuant to CPLR § 302(a)(3)(ii).

In satisfaction of the third element of the test articulated in *Penguin*, Plaintiff—a New York corporation selling its goods in this District—alleges that the patent infringement complaint filed with Amazon "has harmed [Plaintiff's] sales and jeopardized its carefully developed relationship with Amazon."  ECF No. 1 ¶¶ 3, 39.  Plaintiff further alleges that Keenray China and Defendants "hinder[ed] the continued sale and positive review of the [Subject Towel Warmer] by Amazon customers" and that Plaintiff "has lost valuable selling opportunities as a direct and proximate result of" Keenray China and Defendants' acts.  *Id.* ¶ 79.  Such allegations are sufficient to make a prima facie showing that Keenray China and Defendant Peng's tortious acts caused injury to Plaintiff in New York.  *Penguin*, 16 N.Y.3d at 302.

With respect to the fourth element, "courts have emphasized that the test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than a subjective one. . . .  [T]he mere foreseeability of in-state consequence and failure to avert that consequence is not sufficient to establish personal jurisdiction under New York's long-arm statute. . . .  [F]oreseeability must be coupled with evidence of a purposeful New York affiliation, such as a discernible effort to directly or indirectly serve the New York market."  *Zanotti v. Invention Submission Corp.*, No. 18-cv-5893, 2020 WL 2857304, at *15 (S.D.N.Y. June 2, 2020).  While Plaintiff sufficiently alleges that Keenray China, a

9

distributor and exporter of electronic products from China that lists its goods on Amazon may "indirectly serve the New York market," Plaintiff has failed to plead that Defendants themselves have a purposeful New York affiliation. *Id.* at *15.

Finally, with respect to the fifth element—whether Defendants derived substantial revenue from either interstate or international commerce—the Court similarly finds that while Plaintiff sufficiently alleges that Keenray China derives substantial revenue from international commerce, it has failed to plead that Defendants personally derived substantial revenue from interstate or international commerce. *See Siegel v. Holson Co.*, 768 F. Supp. 444, 446 (S.D.N.Y. 1991) (finding no jurisdiction over executive under section 302(a)(3)(ii), as corporate revenue from interstate commerce cannot be imputed to company president).[3]

Accordingly, the Court finds that although Plaintiff makes a prima facie showing of personal jurisdiction with respect to Keenray China pursuant to CPLR § 302(a)(3)(ii), Plaintiff fails to sufficiently plead that this Court may exercise personal jurisdiction over Defendants for their personal actions.

### C. *The Court Lacks Personal Jurisdiction Over Defendant Wu, but May Exercise Personal Jurisdiction Over Defendant Peng Under an Agency Theory Pursuant to 302(a)(3)(ii)*

Plaintiff further argues that New York law permits the exercise of personal jurisdiction over Defendants because Keenray China acts as Defendants' agent. ECF No. 40 at 12–14. The Court finds that Plaintiff has failed to make a prima facie showing that Keenray China acted as an agent of Defendant Wu, but has sufficiently alleged that Keenray China acted as an agent of

---

[3]     Plaintiff has not alleged in the complaint, or otherwise put forth any facts, suggesting that Defendant Peng is a "major shareholder[] of" Keenray China and that the company's revenue can, therefore, be imputed to him through his ownership interest. *See Siegel*, 768 F. Supp. at 446 (distinguishing *Siegel* from another case in which the court had exercised personal jurisdiction over a defendant who was both an officer and a shareholder).

Defendant Peng.[4]

"In New York, the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities unless (1) the corporate veil can be pierced or (2) the corporation acted as an agent for the owner." *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 195 (E.D.N.Y. 2018). "[I]n order for a corporation to be considered an agent of an officer for personal jurisdiction purposes, a plaintiff must allege:  (1) that the corporation engaged in purposeful activities in New York in relation to the transaction; (2) that the corporation's activities were performed for the benefit of the individual defendant; (3) that the corporation's activities were performed with the knowledge and consent of the individual defendant; and (4) that the individual defendant exercised some control over the corporation." *Id.* at 198.

Plaintiff's allegations in the complaint are insufficient to establish that Defendant Wu had knowledge of or consented to any tort against Plaintiff nor that she exercised control over Keenray China.  *Id.* at 195.

> Individual officers are not subject to jurisdiction in New York merely because jurisdiction can be obtained over the corporation here. . . .  [New York courts] have established that individual corporate officers may be subject to jurisdiction in New York if it is established that the corporation is acting as their agent here.  However, a corporation is not necessarily the agent of a corporate officer simply by virtue of the officer's position with the company.  As *Kreutter* [*v. McFadden Oil Corp.*, 71 N.E.2d 40 (N.Y. 1988)] and *Retail Software* [*Servs., Inc. v. Lashlee*, 854 F.2d 18 (2d Cir. 1988)] emphasized, the transaction at issue performed by the corporation here must be with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction.

---

[4]     Defendants argue that the fiduciary shield doctrine shields a "corporate employee from the exercise of personal jurisdiction over him if he acted solely in a corporate capacity within the forum state."  *See* ECF Nos.  39-1 at 7–8; 41 at 3–4.  However, "the fiduciary shield doctrine has been explicitly rejected both by the New York Court of Appeals and the Second Circuit for purposes of § 302."  *Hart v. Tri-State Consumer, Inc.*, No. 21-cv-1738, 2021 WL 5180923, at *6 (S.D.N.Y. Nov. 6, 2021).  Accordingly, the fiduciary shield doctrine does not preclude the exercise of personal jurisdiction over Defendants.

*Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992).  Plaintiff asserts that Keenray China committed two tortious acts by misrepresenting to Amazon that the Subject Towel Warmer infringes upon the 810 Patent.  ECF No. 1 ¶¶ 67–84.  Plaintiff alleges that Defendant Wu is an "owner" of Keenray China and that she listed herself as the sole inventor of the Subject Towel Warmer design shown in the 810 Patent application.  *Id.* ¶ 5.  Plaintiff further alleges that Defendant Wu did not invent the Subject Towel Warmer, but that it was created by Goldenhot.

Assuming Defendants benefitted financially from Keenray China's decision to file an infringement complaint with Amazon—the third element of the test described in *Wolo Mfg. Corp.*, 349 F. Supp. 3d at 198,[5] the Court nonetheless finds that Plaintiff has insufficiently established that Keenray China acted as Defendant Wu's agent.  Plaintiff fails to allege that Defendant Wu had any knowledge of or consented to Keenray China's tortious activity, nor that she exercised control over Keenray China.  "It is not enough that [defendant], as President of [the corporation] likely possessed authority to direct all the activities that gave rise to this suit.  If that were the case, the President of every company would be subject to jurisdiction in New York based on activities with which he or she had no personal involvement and over which he or she exercised no decisionmaking authority."  *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1149 (S.D.N.Y. 1995).  By grouping Defendant Wu's "activities in with the alleged conduct of [Keenray China], [P]laintiff provides no basis for the Court to determine whether [Defendant Wu] was a primary actor orchestrating the allegedly tortious conduct."  *Wolo Mfg.*

---

[5]     *See Basquiat v. Kemper Snowboards*, No. 96-cv-185, 1997 WL 527891, at *3 (S.D.N.Y. Aug. 25, 1997) (finding relatively high ranking position of defendant within small company implied that he would derive financial benefit from sales of infringing product).

*Corp*, 349 F. Supp. 3d at 199.  Therefore, the action against Defendant Wu is dismissed for lack of personal jurisdiction.

In contrast, Plaintiff alleges that Defendant Peng is an owner and principal officer who "directs the actions of [Keenray China]."  ECF No. 1 ¶ 6.  Plaintiff contends that when it reached out about Keenray China's infringement complaint, Defendant Peng complained that Plaintiff's price for the Subject Towel Warmer was "way too low."  *Id.* ¶¶ 50–51.  Plaintiff further alleges that Keenray China "refuses to withdraw its infringement complaint to Amazon unless [Plaintiff] agrees to sell the [Subject] Towel Warmer at a price *approved by Mr. Peng*."  *Id.* ¶ 55 (emphasis added).  Plaintiff sufficiently establishes that Defendant Peng controls Keenray China by alleging that Keenray China refuses to withdraw Keenray China's infringement complaint without his approval.  Moreover, given that Plaintiff corresponded directly with Defendant Peng about Keenray China's infringement complaint and he, as owner of Keenray China, refused to have the company withdraw the complaint unless Plaintiff agreed to sell the Subject Towel Warmer at a higher price, there can be no question that Keenray China's actions were performed with Defendant Peng's knowledge and consent and that he was a "primary actor" in orchestrating the tortious conduct.  *Wolo Mfg. Corp*, 349 F. Supp. 3d at 199.

Accordingly, the Court finds that Keenray China acted as Defendant Peng's agent for the purposes of subjecting him to personal jurisdiction in New York.  *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) ("Section 302(a) also confers jurisdiction over individual corporate officers who supervise and control an infringing activity."); *Carson Optical*, 2020 WL 1516394, at *5 (citing *Chloe* and finding that "[u]nder New York law, jurisdiction over corporate officers is proper under the State's long-arm statute where those officers are primary actors in the conduct that gave rise to the litigation").

13

### III.    Due Process

The only remaining issue is whether the exercise of personal jurisdiction violates Defendant Peng's due process rights.  "There are two components to the due process analysis undertaken to determine whether [a defendant] is subject to the court's jurisdiction for commercial activity involving the State of New York:  (1) the minimum contacts inquiry, and (2) the reasonableness inquiry."  *Carson Optical*, 2020 WL 1516394, at *6.

Defendant Peng's affidavit filed in connection with Defendants' motion to dismiss demonstrates that he has had no contacts with New York whatsoever.  He has neither worked nor resided in New York.  ECF No. 39-2 ¶¶ 1–17.  He has never conducted business in the state nor held a bank account or real property located in New York.  *Id.*  Defendant Peng has also never had employees, agents, facilities or mailings in New York.  *Id.*  He further states that he has never warehoused or stored inventory in New York, conducted meetings or entered into any contracts with a person or corporate entity in New York.  *Id.*  "Thus, even construing the pleadings and affidavits and resolving ambiguities in plaintiff's favor, there is no basis on which to find that [Defendant Peng] has the requisite minimum contacts with New York that would make it reasonable to compel him to defend himself here."  *Moursi v. Mission Essential Pers.*, No. 10-cv-4169, 2012 WL 1030456, at *9 (E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, 2012 WL 1029610 (E.D.N.Y. Mar. 27, 2012).  "The strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over [a party] under circumstances that would offend traditional notions of fair play and substantial justice."  *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987).  New York

is a forum in which Defendant Peng has no minimum contacts.  Accordingly, the Court finds that the exercise of personal jurisdiction would violate Defendant Peng's due process rights.[6]

**IV.     Leave to Amend**

The Court grants Plaintiff thirty (30) days from the date of this Order to file a consolidated amended complaint.[7]

"A court should freely give leave when justice so requires, and it is the usual practice upon granting a motion to dismiss to allow leave to replead.  However, a court need not grant leave to amend if amendment would be futile.  Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *In re Curaleaf Holdings, Inc. Secs. Litig.*, 519 F. Supp. 3d 99, 111 (E.D.N.Y. 2021).

Plaintiff has not explicitly sought leave to amend its complaint in the event the Court granted Defendants' motion to dismiss.  However, the Court cannot conclusively determine that any amendment to the complaint, including specific allegations of minimum contacts with New York, would be futile, and therefore grants Plaintiff leave to file a consolidated amended complaint in accordance with the Court's June 23, 2023, Order.  *See* ECF No. 42; *Woo Hee Cho v. Oquendo*, No. 16-cv-4811, 2018 WL 9945701, at *12 (E.D.N.Y. Aug. 25, 2018) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").

---

[6]     Tellingly, Plaintiff does not address due process in its opposition to Defendants' motion to dismiss.  *See generally* ECF No. 40.

[7]     The Court recently consolidated the instant action with 23-cv-3289 and ordered the parties to file a consolidated amended complaint on docket number 22-cv-6943.  *See* ECF No. 42.

## **CONCLUSION**

For the reasons stated previously, Defendants' motion to dismiss is GRANTED for lack

of personal jurisdiction without prejudice to amend.

SO ORDERED.

Dated: Brooklyn, New York
        June 23, 2023

                                        */s/ Hector Gonzalez*
                                        HECTOR GONZALEZ
                                        United States District Judge

16