Max Moskowitz
Ariel Peikes
OSTROLENK FABER LLP
845 Third Avenue, 17th Floor
New York, New York 10022
mmoskowitz@ostrolenk.com
apeikes@ostrolenk.com
Telephone: (212) 596-0500
Facsimile: (212) 382-0888

*Attorneys for Plaintiffs*
*Sound Around, Inc., and*
*Goldenhot Plastic & Hardware Products Co., Ltd*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOUND AROUND, INC., and<br>DONGGUAN GOLDENHOT PLASTIC &<br>HARDWARE PRODUCTS CO., LTD,<br><br>   *Plaintiffs,*<br>v.<br><br>SHENZHEN KEENRAY INNOVATIONS LIMITED,<br>WENG FENG PENG (a/k/a FENSON PENG), and<br>U.S. Patent No. D952,810 S, *in rem*.<br><br>   *Defendants*. | Civil Action No: 22-cv-6943 |

**AMENDED AND CONSOLIDATED COMPLAINT FOR DECLARATORY JUDGMENT**
**OF NO PATENT INFRINGEMENT, FOR UNFAIR COMPETITION LANHAM ACT**
**VIOLATIONS, AND FOR RESTORATON OF PATENT OWNERSHIP**

Plaintiffs, SOUND AROUND, INC. ("Sound Around") and DONGGUAN

GOLDENHOT PLASTIC & HARDWARE PRODUCTS CO., LTD ("Goldenhot"),  through

their counsel and for the complaint against Defendants Shenzhen Keenray Innovations Limited

{02863726.1}

("Keenray"), Weng Feng Peng ("Peng") and, in rem, relative to U.S. Patent No. D952,810 S

("the '810 patent") state as follows:

1.      This is an action for a Declaratory Judgment of no patent infringement under the

U.S. Patent laws, 35 U.S.C. § 1 *et seq.*  Specifically, Sound Around seeks a Declaratory

Judgment that its "SA Towel Warmer" product does not infringe upon U.S. Patent No. D952,810

S ("the '810 Patent"), which has been asserted against Sound Around by Defendant Keenray to

Amazon.com, Inc. ("Amazon") (and indirectly against Goldenhot, its putative inventor and

manufacturer), and has caused Amazon to have delisted the product from its ecommerce

platform. Goldenhot requests that ownership of the '810 patent be restored to itself and,

alternatively, Sound Around requests that the Court deem the patent to be invalid and/or

unenforceable.

2.      Sound Around also asserts that Defendants Keenray and Feng (collectively,

hereinafter, "the Keenray Defendants") committed acts of unfair competition, in violation of the

U.S. Lanham Act, 15 U.S.C. § 1051 *et seq.*, by falsely stating to Amazon that Sound Around has

infringed upon Keenray's '810 Patent that, in fact, was obtained through fraud and, therefore, is

invalid and unenforceable. For the same conduct, Plaintiff asserts related claims under New York

Law for tortious interference with an existing business relationship.

## THE PARTIES

3.      Plaintiff, Sound Around is a New York corporation with an office in Kings

County, New York, at 1600 63rd Street, Brooklyn, NY 11204. Sound Around is an importer and

seller of high-end electronic products and other consumer goods.

4.      Plaintiff Goldenhot's formal name is Plastic & Hardware Products Co., LTD.,

d/b/a "Goldenhot". It is a Chinese corporation with an office at Building 3, No.2, Yi'An Middle

Road, Yantian Village, Fenggang Town, DongGuan City, GuangDong, China. Goldenhot is the creator and manufacturer of various electronic products and other consumer goods.

5.      Defendant Shenzhen Keenray Innovations Limited ("Keenray") is a Chinese limited liability complaint, with a business address at Rm. 1508 Zhongan Bldg, Guangchang Road Wenjing Community, Buji St, Longgang Shenzhen, Guangdong CHINA 518000.  Keenray is a distributor and exporter (from China) of electronic products.

6.      Defendant Peng is an individual who is an owner and is the principal officer of Defendant Keenray. Upon information and belief, Peng has a business address at Rm. 1508 Zhongan Bldg, Guangchang Road Wenjing Community, Buji St, Longgang Shenzhen, Guangdong CHINA 518000. Also, upon information and belief, Defendant Peng directs the actions of Defendant Keenray. Former Defendant Danxia Wu ("Wu") is an individual who is an owner of Defendant Keenray. Upon information and belief, Wu has a business address at Rm. 1508 Zhongan Bldg, Guangchang Road Wenjing Community, Buji St, Longgang Shenzhen, Guangdong CHINA 518000. Wu is the purported inventor of a design shown in U.S. Patent No. D952,810 S (the '810 Patent), however, she did not actually invent the subject design and made fraudulent statements to the U.S. Patent Office in order to obtain the '810 Patent for herself and Defendant Keenray.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction over the subject matter of this action pursuant to the Patent Act (35 U.S.C. § 1 *et seq.*), the Lanham Act (15 U.S.C. § 1051 *et seq.*), and the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202). This Court has subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 *et seq.*

8.   Venue in this judicial district is proper under 28 U.S.C. § 1391 in that Plaintiff Sound Around resides in and/or conducts substantial business in this judicial district and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

9.   This Court has personal jurisdiction over Defendants because they regularly conduct business and offer and ship their products in this judicial district, and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendants' wrongful acts and injury to Plaintiffs occurred in this judicial district. Without limitation, Defendants Keenray and Peng have caused their products, including their competing towel warmer product, to be offered, sold and shipped into this judicial district.

10. On information and belief, the Defendants Keenray and Peng are inextricably intertwined with the marketing, selling, and shipping of the subject towel warmers into the United States and into the State of New York. Sound Around is aware and submits that Keenray and Peng have themselves carried out steps that resulted in the shipping of at least two of the subject towel warmers into the State of New York, including into this District.

## FACTS RELEVANT TO ALL CLAIMS

11. Sound Around was founded over forty (40) years ago. Sound Around has been and remains a leading importer and seller of high-quality electronics products, especially, audio and video products, DJ equipment and musical instruments. Sound Around offers many other consumer products such as houseware, kitchen appliances, fitness equipment, toys and scooters, among others. Presently, the company offers thousands of different products to end consumers in the United States.

12. Sound Around does not itself manufacture products. Instead, it purchases products and arranges for one of its brand names to be placed thereon. Sound Around's brand names include the following: PYRAMID, PYLE, LANZAR, SERENELIFE, NUTRICHE, and more than twenty (20) other famous brand names.

13. Sound Around markets and sells its products directly through its own portal www.pyleusa.com, and through third-party ecommerce portals such as Amazon, Walmart and eBay.

14. At Amazon, Sound Around operates several "Amazon Stores" including SereneLife and NutriChef.

15. The Amazon selling portal is extremely important to Sound Around's business.  The company has spent years developing its presence on Amazon and developing trust with Amazon and Amazon's consumers.

16. Any threats to Sound Around's good standing with Amazon is significant. One area of potential risk to Sound Around is that a third-party will allege that a Sound Around product infringes upon the third-party's intellectual property rights such as a patent, copyright or trademark.

17. Multiple IP infringement allegations against a seller, such as Sound Around, on Amazon can lead to the seller's entire store (or stores) being shuttered permanently.

18. As is set forth herein, the Keenray Defendants are responsible for an allegation of patent infringement to Amazon, and against Sound Around, that is based upon fraud on the U.S. Patent Office. In turn, the Keenray Defendants' fraud has been perpetuated against Amazon and Sound Around.

19. The product at the heart of this lawsuit is a towel warmer. The towel warmer product is intended to warm a towel while one is bathing or showering, and then allows the bather to dry herself with a luxuriously heated towel. This product is depicted in **Exhibit A** hereto.

20. The Plaintiff Goldenhot is Chinese manufacturer, and the one who originated the product design shown in Exhibit A.

21. Goldenhot applied for patents on a towel warmer product with a hinged lid and received two patents (a Design patent and a utility model patent) as detailed below.


A.     Design Patent Certificate, Certificate number: 4805777

Name of design: Towel warmer E1819

Designer: ZHAOXIU HUA(my boss)/CHAOWEI QI (my engineer)

Patent Number: 2018301197961

Apply date: 2018/3/28

PATENTEE: 东莞市固豪塑胶五金制品有限公司

DONGGUAN GOLDENHOT PLASTIC & HARDWARE PRODUCTS CO., LTD.

Address: Building 3,No.2,Yi'AN Middle Road, Yantian Village,

Fenggang Town, DongGuan City, GuangDong, China

523000 东莞市凤岗镇雁田村怡安中路 2 号第 3 栋厂

Authorization Announcement Number: CN304786922S


B.     Utility model patent, Certificate number: 7933434

Name of design: Towel warmer E1819

Designer: ZHAOXIU HUA (my boss)/CHAOWEI QI (my engineer)

Patent Number: 2018204299139

Apply date: 2018/3/28

PATENTEE: 东莞市固豪塑胶五金制品有限公司

DONGGUAN GOLDENHOT PLASTIC & HARDWARE PRODUCTS CO., LTD.

Address: Building 3, No.2,Yi'AN Middle Road, Yantian Village,

Fenggang Town, DongGuan City, GuangDong, China

523000 东莞市凤岗镇雁田村怡安中路 2 号第 3 栋厂

Authorization Announcement Number: CN207947909U

    22. Shown below, is a photo of the hinged towel warmer that is the subject of the two

Chinese patents:



(Id, at Par. 4).

    23. In 2019, Goldenhot redesigned its hinged towel warmer product. (Id., at Par. 6).

    24. Goldenhot first sold the redesigned towel warmer to Keenray on August 3, 2020. (Id,

at Par. 9).

25. Unbeknownst to Goldenhot, Keenray filed for a U.S. patent on the updated towel warmer product design. The Keenray U.S. patent application was filed on November 10, 2020. (Id., at Pat. 10); (**Exhibit B** is a copy of the issued '810 Patent).

26. In late 2020 and early 2021, Goldenhot sold the subject towel warmer to Sound Around and other U.S. customers. Several of them currently sell this product in the U.S. through Amazon.

27. As indicated above, on November 10, 2020, Danxia Wu filed a patent application with the U.S. Patent Office. The application claims "invention" of a design originated by plaintiff Goldenhot, which had already been manufactured and sold by Goldenhot to Defendant Keenray, Plaintiff Sound Around, and other companies that sell in the U.S.

28. Products with the subject design had been sold to Keenray on August 3, 2020, more than three months before Defendants Wu and Keenray filed the '810 Patent Application.

29. Under the U.S. Patent Laws only true and correct inventors are permitted to file an application to secure a patent, and knowingly filing for a patent and misrepresenting oneself as an "inventor" results in the ensuing patent being "invalid" and "unenforceable." Also, entities and/or persons who knowingly enforce a "fraudulently" procured patent are subject to additional liabilities and punishment.

30. The subject patent application, the '810 Patent, lists a single Inventor, Keenray's employee Wu. (See Exhibit B).  However, Wu and Keenray became aware of this design by purchasing product incorporating the design from Goldenhot.  Therefore, Wu cannot be the inventor.

31. The '810 Patent identifies the owner/assignee of the patent rights (via Defendant Wu) to be Defendant Keenray.

32. The Patent Laws impose on patent applicants and upon their attorneys and representatives a "duty of candor and good faith". See 37 C.F.R. 1.56.

33. Falsely claiming to be an "inventor" before the United States Patent and Trademark Office (PTO) amounts to "inequitable conduct", which includes: "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." (As set forth in Purdue Pharma L.P. v. Boehringer Ingelheim GMBH, 237 F.3d 1359, 1366, 57 USPQ2d 1647, 1652 (Fed. Cir. 2001)).

34. To procure the '810 Patent, Ms. Wu declared to the U.S. Patent Office that "She is the original inventor of the invention embodied" in the patent application. She signed that she "acknowledges and declares that willful false statements and the like are **punishable by fine or imprisonment, or both…and may jeopardize the validity of the application or any patent issuing thereon**…" (Emphasis supplied).

35. Wu's fraud includes failing to disclose the subject design as "prior art" and, of course, claiming that the invention actually originated with her when she came to know the design through a third-party, Goldenhot.

36. The Patent Examiner initially rejected the application for the '810 Patent because public documents showed the claimed invention had been offered and sold in the U.S. prior to the filing date for the patent.

37. In order to overcome the Examiner's rejection, Ms. Wu provided the declaration below, stating that she invented the claimed subject matter, and that the prior art was from Keenray, even though the product had been created and manufactured by Goldenhot and sold to Keenray, at wholesale.

**37 CFR1.130(a) Declaration**

Inventor, Danxia Wu, hereby affirms and declares that:

1. She is the original inventor of the invention embodied in the US patent application # 29757940, entitled "Blanket Towel Warmer".

2. She is a co-owner of Shenzhen Keenray Innovations Limited, which sells the "Keenray Towel Warmer" quoted by the Office on various commercial outlets and online platforms. Therefore, this prior art is a disclosure made by Inventor herself and was made within one year prior to the filing the instant application.

3. She has filed an assignment to assign the instant application to Shenzhen Keenray Innovations Limited.

4. Inventor/Applicant acknowledges and declares that willful false statements and the like are punishable by fine or imprisonment, or both (18 U.S.C.1001), and may jeopardize the validity of the application or any patent issuing thereon. Applicant acknowledges and declare that all statements made of the declarant's own knowledge are true and that all statements made on information and belief are believed to be true.

Signature _____ / Danxia Wu /_____

Date _____03/19/2022_____

38. The Patent Office was not aware that Wu's statements were fraudulent, and that the design originated with Goldenhot. Therefore, the Patent Office issued the '810 Patent to Keenray, on May 24, 2022. (See Exhibit B).

39. Sound Around's dispute with the Keenray Defendants stems from their wielding the fraudulently obtained '810 Patent against Sound Around by filing a bogus patent infringement complaint to Amazon. This has harmed Sound Around's sales and jeopardized its carefully developed relationship with Amazon.

40. Sometime in 2022, Defendant Keenray contacted Amazon and demanded that Amazon delist, i.e., cease offering, Sound Around's "SA Towel Warmer," listed under Amazon's ASIN number, B0961BDJPX.

41. The basis of Keenray's complaint to Amazon was that Sound Around's SA Towel Warmer infringes upon the '810 Patent. (Id.).

42. Amazon does not adjudicate the validity of patents. Rather, when presented with a patent, Amazon presumes that the patent is valid and enforceable.

43. Therefore, on October 17, 2022, Amazon delisted Sound Around's "SA Towel Warmer" due to the alleged "patent infringement" and informed Sound Around:

> If you think that the rights owner has made an error, please reach out to the rights owner and **ask them to submit a retraction of the complaint ID listed below. We may only accept retractions that the rights owner submits to us directly**. We do not accept forwarded or attached retractions. Rights owner contact information is provided below.
>
> If a retraction or appeal is submitted for the complaint ID listed below and accepted by Amazon, any actions taken as part of this case will be reversed. **If a retraction or appeal is not submitted for the complaint ID listed below, the actions originally taken will remain in place**."

(Emphasis supplied).

44. In addition, Amazon warned Sound Around that: "If we receive more complaints about your listings, we may take further action **up to and including <u>not allowing you to sell to Amazon</u>**." (Emphasis supplied)(Id., at Par. 10).

45. Therefore, the Keenray Defendants' fraud has put Sound Around at imminent and grave risk that its Amazon stores will be shuttered permanently and it will be unable to sell to Amazon's customers.  Amazon's prescribed way for the complaint to be resolved in Sound

Around's favor is for Keenray to write to Amazon and retract its infringement allegations against. (See Id., at Par. 9).

46. To date, Defendants refuse to retract their fraudulent allegations against Sound Around.

47. Amazon has acted in good faith, including seeking to root out potential counterfeit products from its platform.

48. Amazon, by accepting the Keenray Defendants' patent infringement allegations and the validity of the '810 Patent at face value, has itself been defrauded by the Keenray Defendants. Amazon has unwittingly aided and abetted the Keenray Defendants' fraud against Sound Around.

49. If Amazon were to review the clear evidence of fraud by the Keenray Defendants, including that the product design originated with Goldenhot, and not with Wu and Keenray, then surely Amazon would reject the infringement claim by Keenray against Sound Around.

50. Sound Around's president, Jerry Brach (whose father is known as "Ziggy") contacted Keenray's principal, Weng Feng Peng (a.k.a. "Fenson Peng") and requested that the infringement complaint to Amazon be withdrawn because it lacks merit.

51. Keenray has refused to withdraw the complaint to Amazon. Mr. Peng complained to Mr. Brach that: "Your sell price $80 is way too low, how do you make money by this business?" This suggests that Keenray's gripe with Sound Around is that Keenray cannot compete with Sound Around's pricing.

52. Sound Around's U.S. counsel, Max Moskowitz, Esq., has also been in email communication with Mr. Peng, but to no avail. Mr. Peng does not respond to the contention that there is "clear evidence that Danxia Wu is not the real inventor of the '810 Patent."

53. Similarly, Mr. Peng does not deny the accusation that he and his company used Danxia Wu to fraudulently procure the '810 patent.

54. Mr. Moskowitz has reached out to the Patent Attorney who prosecuted the '810 Patent - Zhihua Han, Esq., and relayed to Mr. Han the clear evidence of fraud by Wu and Keenray on the Patent Office.  Mr. Han has not responded to these communications.

55. The supplier of the towel warmer to Keenray and Sound Around, Goldenhot, has also asked Keenray to withdraw its infringement claims against Sound Around.  In these communications, Keenray's principal, Defendant Peng, has refused to admit that Keenray should not have applied for the patent. Moreover, Keenray refuses to withdraw its infringement complaint to Amazon unless Sound Around agrees to sell the SA Towel Warmer at a price approved by Mr. Peng.  This further informs Plaintiff's understanding that the Keenray Defendants seek to improperly control the pricing for a towel warmer product they only distribute and did not invent.

56. To date, Defendants continue to weaponize the '810 Patent against Sound Around and they refuse to withdraw their "patent infringement" allegations from Amazon.

57. This is also an action for correcting inventorship and ownership of U.S. Patent No. D952,810 S ('the '810 patent") pursuant to the U.S. Patent Laws, at 35 U.S.C. § 256, by Goldenhot. Defendant Keenray erroneously and incorrectly represented to the U.S. Patent Office (PTO) that Danxia Wu is the inventor of a subject towel warmer design, when in fact, the patent application should identify employees of Goldenhot who invented the design on behalf of Goldenhot.

58. Further, Plaintiffs Goldenhot and Sound Around seek redress under the Federal Lanham, at Section 43(a)(1)(B), for Keenray's false labeling of an electrical appliance with

Goldenhot's "ETL" safety certification number.  The Keenray Defendants' use of Goldenhot's ETL certification number falsely suggests that Goldenhot is the manufacturer of the product sold by Keenray, when in fact, the Keenray product is a counterfeit of authentic Goldenhot product.

59. Because Sound Around and Keenray U.S. sell similar looking towel warmers in the United States in head to head competition against each other, Keenray's fraudulent affixing of Goldenhot's ETL Mark to its "lookalike" towel warmers misleads and deceives United States consumers, which amounts to false advertising under the Lanham Act, irreparably harming both Sound Around and Goldenhot.

60. Goldenhot formerly sold authentic product to Keenray, but now Keenray is using a third party to manufacture counterfeits of the Goldenhot towel warmer. Sound Around, unlike Keenray, remains a customer of Goldenhot and sells authentic Goldenhot towel warmers to U.S. consumers.  Therefore, Sound Around is authorized to display Goldenhot's ETL number on the towel warmers that it offers and sells.

61. Keenray's conduct described in the preceding paragraph amounts to unfair competition under the federal Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as under the New York State Business Laws.

62. Plaintiffs seek a ruling that Keenray engages in false advertising under the Lanham Act, pursuant to Section 43(a), when it falsely uses Goldenhot's unique, Intertek-issued ETL certification number. The ETL Mark is proof of product compliance to North American safety standards, and many consumers look for the ETL mark, or to the similar UL mark, for assurance that the electrical appliance is not a fire hazard and is safe to bring home. Goldenhot's towel warmer product is tested for ETL certification, whereas Keenray's towel warmer is not. Keenray

usurps the Goldenhot ETL certification number in order to deceive consumers about the quality of its towel warmer.

63. In part, and because Keenray has engaged in elaborate maneuvers to avoid service of the Complaint upon it, the Plaintiff Goldenhot herein includes as a defendant in this action the corpus of the '810 patent, by also lodging its Complaint herein against the '810 patent, which is a properly located in the United States, *in rem*. This is intended to curb or block Keenray's avoidance of service, through service of the Complaint directly against the '810 patent here in the United States.

64. Upon information and belief, the leadership and operations of Keenray China and Keenray US are substantially intertwined, so much so that they essentially operate as a single corporate entity.

65. As to the *in rem* action against U.S. Patent No. D952,810 S, Congress has reacted to fraudulent cybersquatting activities, particularly by off-shore, difficult to identify or reach, entities by providing *in rem* jurisdiction relative to domain names that infringe on registered U.S. trademarks in 15 U.S.C. 1125(d)(2), and there should not be any bar to judicially extending *in rem* jurisdiction to patent properties, now that U.S. Nationals have become victimized by a flood of similar activities in relation to patent rights. And while domain names are registered by private, non-governmental agencies and the Lanham Act provides for jurisdiction only where the domain name registrar is actually located, actions involving rights granted by the U.S. Government, e.g., patents and trademarks, can be lodged in Federal Courts anywhere in the country.

66. As noted, Goldenhot is a professional manufacturer that specializes in electronic appliances. It is located in Dongguan City, Guangdong Province. Goldenhot is an integrated

enterprise combined with development, manufacture, sales and service. Goldenhot wholesales many of its products to U.S. companies, such as to Plaintiff Sound Around and, previously, to Defendant Keenray U.S.

67. One product designed, manufactured and private-labeled by Goldenhot, and sold at retail by Sound Around (under its SERENELIFE brand) is a towel warmer product, shown here:



68. Previously, the Keenray Defendants purchased the subject towel warmer from Goldenhot, and sold the product to U.S. consumers, including to purchasers residing in this State and in this District.

69. The product at the heart of this lawsuit is a towel warmer, as shown above. The towel warmer product is intended to warm a towel while one is bathing or showering, and then allows the bather to dry herself with a luxuriously heated towel.

70. As noted, The Goldenhot Tower Warmer Design was invented and created by the Goldenhot employees, Zhaoxiu Hua and Chaowei Qi, who have designed other towel warmers and similar products for and on behalf of Goldenhot, and who are legally obligated to assign their inventions to Goldenhot.

71. In late 2020 and early 2021, Goldenhot sold the subject towel warmer to Sound Around and other U.S. customers. Several of them currently sell this product in the U.S. through Amazon.

72. Goldenhot submits its towel warmer products for safety assessment, including Intertek's "ETL" safety certification analysis ("ETL Mark").

73. Intertek is renowned for its inspection, product testing and certification services. It is the largest tester of consumer goods in the world and has a network of more than 1,000 laboratories across the globe.

74. Participation in the Intertek's ETL program demonstrates compliance with the requirements of widely accepted product safety standards, as determined through independent testing and periodic follow-up inspections by a Nationally Recognized Testing Laboratory (NRTL).  The NRTLs are independent laboratories recognized by the U.S. Occupational Safety and Health Administration (OSHA) to test products to the specifications of applicable product safety standards.

75. The ETL Mark indicates to distributors, retailers and customers that the product has been tested by Intertek and found to be in compliance with accepted national standards.

76. Goldenhot's towel warmer product received authorization to display the Intertek "ETL" mark and to apply the Control Number "4003795". (**Exhibit C**).  This Control Number was issued specifically to Goldenhot, more precisely to the Goldenhot towel warmer made by and with product components that have been designed and/or selected by Goldenhot.

77. Given that Goldenhot ceased selling its Goldenhot Towel Warmer to Keenray many months ago, Goldenhot was perplexed to discover that towel warmers identical in appearance to its authentic products are being sold in large quantities by Keenray U.S. through Amazon.

78. Goldenhot procured a sample of that product, which it dismantled and carefully examined. The examination established that the Keenray towel warmers are actually manufactured by a third party using different and inferior components.

79. Even though the Keenray towel warmers are not authentic Goldenhot products, they display Goldenhot's unique ETL certification number: "4003795."

(A)     The following is a photograph of a sticker attached to the Keenray towel warmer:



The sticker displays Goldenhot's ETL Control Number, "4003795", and displays the Intertek ETL trademark, without authorization.

(B)     The following are photographs of the product packaging (the box) for the Keenray towel warmer:





The Intertek "ETL" trademark is shown, without authorization, on the front of the box.

80. Plaintiffs have reported to Amazon the fraudulent use of Goldenhot's ETL Control Number by Keenray U.S. However, Amazon has declined the request to de-list the Keenray towel warmer product, suggesting that remedial action must be pursued through a trademark action by Intertek, owner of the ETL trademark.

81. In addition to lodging complaints with Amazon, Goldenhot has filed a complaint in China against Keenray and against the manufacturer who supplies Keenray with the towel warmer product and applies the false ETL markings on the Keenray product and product packaging.

82. Because of Keenray's actions, Goldenhot has lost control over its ETL certification number, which reflects on Goldenhot's reputation as a manufacturer. In the event of an electrical short, electrical fire, or other harm or malfunction caused by the Keenray towel warmer, the design or manufacturing flaw would be attributed to Goldenhot because of its unique ETL

number. Goldenhot's reputation would be irreparably harmed by Keenray's unauthorized use of the Goldenhot's ETL number on a product with inferior parts and craftsmanship.

83. Keenray China unfairly competes with Goldenhot by fraudulently displaying Goldenhot's ETL Control Number.  Unlike Goldenhot, Keenray China's towel warmer products have not been tested by OSHA recognized laboratories.

84. Similarly, Keenray U.S. unfairly competes with Sound Around by offering and selling the towel warmer products that fraudulently display Goldenhot's ETL Control Number even though those products have not been tested by OSHA recognized laboratories.

85. The knowing and brazen unfair competition by Keenray against Goldenhot and Sound Around is underscored and reinforced by Keenray's thumbing its nose at this Court's Order enjoining Keenray from taking any steps to enforce the '810 patent while the Related Action is pending. Thus, Keenray has been threatening Goldenhot to cease selling its towel warmer at suit here to Sound Around, which it is clearly forbidden from doing by the PI Order in the Related Action.

86. Keenray's conduct relative to matters raised herein and their brazen ignoring of this Court's Order in the Related Action is a very clear indication that Keenray U.S. is a "flight risk" party that is likely to abscond with the ill-gotten profits and benefits that they received from their unfair competitive acts.

87. Commensurate therewith, and given Amazon's turning a blind eye toward the unfair acts presented herein, the Plaintiffs herein should be accorded an Order directing Amazon to freeze the funds accumulated by Amazon relative to the Keenray U.S. operation with which it is involved and which it controls.

88. Keenray has offered, sold and shipped into this judicial district its competing towel warmer product. On January 10, 2023, counsel for Sound Around ordered the subject Keenray product via Amazon to a New York, New York address. (**Exhibit D**, hereto). The product was delivered later in January.  On February 6, 2023, counsel for Sound Around returned the Keenray product to an Amazon return center, ultimately resulting in a refund. (Id.).

## COUNT I

### Sound Around's SA Towel Warmer Does Not Infringe on Keenray's '810 Patent – No Infringement of the Patent in Violation of 35 U.S.C. § 271

89. The preceding Paragraphs are incorporated as if fully set forth herein.

90. This is an action for Declaratory Judgment that Sound Around's sale of its towel warmer product does not infringe on any patent rights of Keenray, specifically, U.S. Patent No. D952,810 S.

91. Sound Around repeats and realleges the averments contained in the preceding Paragraphs of this Complaint as if fully set forth herein.

92. The Keenray Defendants knew that Wu is not the true "inventor" of the subject towel warmer design. Nevertheless, the Keenray Defendants worked in concert to submit fraudulent claims to the U.S. Patent Office and made numerous false and fraudulent statements to the Patent Office, and otherwise failed to provide disclosures required by the Patent Laws.

93. The Keenray Defendants successfully defrauded the Patent Office and secured the '810 Patent, which issued in May 2022.

94. Under 35 U.S.C. 102(a)(1), an applicant is not entitled to a patent if the claimed subject matter was publically available before the effective filing date of the application.  Before the filing of Wu's patent application, the towel warmer design had been sold by several retailers,

including Defendant Keenray, all of whom had received the product at wholesale from Goldenhot.

95. Also under the U.S. Patent Laws, only a true and correct inventor is permitted to file an application to secure a patent. Knowingly filing for a patent, when you are not an inventor, results in the ensuing patent being "invalid" and "unenforceable."

96. After having defrauded the Patent Office, the Keenray Defendants further perpetuated their fraud by asserting to Amazon that Sound Around's SA Towel Warmer infringes the '810 Patent. This resulted in Amazon delisting Sound Around's product.

97. Also as a result, Amazon warned Sound Around that should any other allegations of infringement be directed at products offered by Sound Around, then Sound Around could be barred from offering any products on Amazon. Sound Around's Amazon storefronts could be shuttered, and Sound Around would not be able to sell to Amazon's customers.

98. By reason of the foregoing, Sound Around is suffering and will continue to suffer irreparable harm from the Keenray Defendants' fraudulent acts, in the manner set forth above, unless a Declaratory Judgment issues that Sound Around does not infringe the '810 Patent. Sound Around is also entitled to a declaratory judgment that the '810 Patent is invalid and/or unenforceable under one or more provisions of 35 U.S.C. §§ 102 and 103.

99. Also by reason of the foregoing, Sound Around is suffering and will continue to suffer irreparable harm, unless and until the Court directs the Keenray Defendants to withdraw Keenray's complaint to Amazon.

## COUNT II

## Unfair Competition in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) and Common Law

100.    The preceding Paragraphs are incorporated as if fully set forth herein.

101.    The Keenray Defendants' acts of directing Amazon to delist Sound Around's product on the basis of alleged patent infringement, even though they knew that they obtained the '810 Patent through fraud, constitutes a violation of the Lanham Act. See *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999), holding that a bad faith infringement allegation supports a Lanham Act cause of action for unfair competition.

102.    Sound Around repeats and realleges the averments contained in the preceding Paragraphs of this Complaint as if fully set forth herein.

103.    The '810 Patent is invalid because it lists Defendant Wu as the "inventor", when in fact, Wu did not invent the design.  The design was invented by third-party individuals for Goldenhot, which sold product incorporating the patented design to Defendant Keenray and to Plaintiff Sound Around.

104.    Under the U.S. Patent Law only a true and correct inventor is entitled to receive a patent. See Egenera, Inc. v. Cisco Systems, Inc., 972 F.3d 1367, 1376 (Fed. Cir. 2020)("The Constitution authorizes awarding patent exclusivity only to an inventor…so courts have historically held that if a patent does not reflect its true inventorship, it is invalid.).

105.    By asserting the '810 Patent against Sound Around, despite their knowledge that Wu is not the true inventor of the design, the Keenray Defendants made false statements to Amazon that were designed to injure Sound Around's reputation and standing with Amazon.

106.     The Keenray Defendants have made it clear that the intent of their false patent infringement claims is to force Sound Around to raise its prices.

107.     The Keenray Defendants' false allegations of patent infringement by Sound Around amount to unfair competition under the Federal Lanham Act.

108.     By reason of the foregoing, Sound Around is suffering and will continue to suffer irreparable harm, unless and until the Court enjoins the Keenray Defendants' activities and directs them to withdraw Keenray's complaint from Amazon and to account and pay to Sound Around all its damages that it has suffered, including attorneys' fees for reckless statements to Amazon that have resulted in harm to Sound Around.

## COUNT III

### Tortious Interference with Existing and Potential Business Relationships

109.     The preceding Paragraphs are incorporated as if fully set forth herein.

110.     This is a claim for tortious interference with existing and potential business relationships under New York State law.

111.     Sound Around repeats and realleges the averments contained in the preceding Paragraphs of this Complaint as if fully set forth herein.

112.     Defendants' actions, as described herein, including misrepresenting to Amazon that Sound Around's towel warmer product infringes upon Keenray's fraudulently procured, invalid '810 Patent has harmed Sound Around's selling relationship with Amazon by (a) causing the removal from Amazon of Sound Around's SA Towel Warmer product, and (b) putting Sound Around at risk of its Amazon stores being permanently closed as a result of legally false infringement complaints, and (c) hindering the continued sale and positive review of the SA

Towel Warmer product by Amazon customers so that, even if the listing were restored, it would be at a disadvantage to similar products offered by Sound Around's competitors.

113.    In making these false statements to Amazon, the Keenray Defendants intended to harm, and have, in fact, irreparably harmed Sound Around's reputation with Amazon and Amazon's customers.

114.    Sound Around has lost valuable selling opportunities as a direct and proximate result of the Keenray Defendants' acts.

115.    By reason of the foregoing, Sound Around has suffered, and will continue to suffer, severe irreparable harm from which there is no adequate remedy at law.

116.    Sound Around is entitled to the imposition of a preliminary and permanent injunction against the Keenray Defendants, to restrain and enjoin them and their agents, and those acting in concert and participation with them, from further tortiously interfering with the Plaintiff's business relationship with Amazon.

117.    By reason of the foregoing, Plaintiff is entitled to an award of damages from Defendants in an amount to be determined at trial.

118.    Defendant's aforesaid acts are of such wanton, willful and malicious nature, that Sound Around is entitled to an award of punitive damages in an amount to be determined at trial, in order to punish the Keenray Defendants and deter others similarly situated from committing such acts in the future.

119.    Also by reason of the foregoing, Sound Around is suffering and will continue to suffer irreparable harm, unless and until the Court directs the Keenray Defendants to withdraw Keenray's complaint to Amazon.

## COUNT IV

### CORRECTION OF NAMED INVENTOR AND OWNER OF
### U.S. PATENT NO. D952,810 S PURSUANT TO 35 U.S.C. § 256

#### (Plaintiff Goldenhot)

120.     The preceding Paragraphs are incorporated as if fully set forth herein.

121.     Zhaoxiu Hua and Chaowei Qi are the actual inventors of the design claimed in the '810 Patent.

122.     Hua and Qi are employees of Goldenhot, and they invented the design embodied in the '810 Patent on behalf Goldenhot.

123.     Defendant Keenray China erroneously listed Danxia Wu as the sole inventor. However, Ms. Wu has did not invent or contribute to the invention reflected in the '810 design patent.

124.     Because of Keenray China's error in identifying Ms. Wu as the inventor, Ms. Wu assigned the rights in the patent application to Keenray China.  Had the correct inventors been identified in the application, they would have assigned the application to their employer, Goldenhot.

125.     Pursuant to 35 U.S.C. § 256, Goldenhot seeks a certificate of correction: (1) naming Zhaoxiu Hua and Chaowei Qi as the inventors of the '810 patent, and removing Danxia Wu as an inventor; and (2) naming Goldenhot as the Assignee and Owner of the '810 Patent, and removing Keenray China as Assignee and Owner of the '810 Patent.

## COUNT V

## UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B) AND COMMON LAW

126.    The preceding Paragraphs are incorporated as if fully set forth herein.

127.    Millions of consumers recognize and look for the ETL certification mark, or to the similar UL mark, to assure themselves that the electrical appliance they are considering purchasing is not a fire hazard and is safe to bring home.

128.    Plaintiff Goldenhot has attained "ETL" certification by subjecting its towel warmer products to testing by OSHA approved independent laboratories.

129.    Intertek issued to Goldenhot ETL Control Number 4003795 based on Goldenhot's proven compliance with North American safety standards.

130.    In comparison, the Keenray Defendants have not subjected their products to testing by OSHA approved independent laboratories.

131.    Keenray has not attained ETL certification.

132.    Previously, Keenray purchased the towel warmer product from Goldenhot and, therefore, was authorized to display Goldenhot's ETL Control Number.

133.    Keenray now offers imitations of Goldenhot's authentic towel warmer product, which are manufactured by a third party. Therefore, Keenray has no authorization to display the Control Number reserved for product manufactured by Goldenhot.

134.    The Keenray Defendants, by labeling and displaying their products with Goldenhot's unique ETL Control Number "4003795" and with the ETL logo trademark have violated the Lanham Act's prohibition against unfair competition.

135.     Only Goldenhot and its wholesale customers (e.g., Plaintiff Sound Around) may display Goldenhot's unique ETL Control Number, "4003795".  Even though Keenray U.S. no longer procures authentic Goldenhot product and obtains its towel warmers from a third-party manufacturer, Keenray places Goldenhot's unique ETL Control Number onto the towel warmer products it offers and sells to consumers. The Keenray U.S. towel warmers were not subjected to the necessary testing for an ETL Control Number.

## COUNT VI

## FALSE ADVERTISING UNDER SECTION 43(A) OF THE LANHAM ACT

### (Goldenhot and Sound Around)

136.     The preceding Paragraphs are incorporated as if fully set forth herein.

137.     Many consumers look for the ETL certification mark to assure themselves that the electrical appliance is not a fire hazard and is safe to bring home.

138.     Goldenhot applied for and received the ETL safety certification.

139.     Goldenhot and Sound Around display Goldenhot's ETL number on their authentic Goldenhot towel warmer products.

140.     The Keenray Defendants' use of Goldenhot's ETL number in connection with their towel warmer products violates Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) because such designation misrepresents Keenray's rights in the ETL marking and misrepresents the nature, characteristics and/or qualities of Keenray's electrical products.

141.     On information and belief, the Keenray Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate and in bad faith.

142.     The Keenray Defendants' violation of this statute has caused and will continue to cause irreparable harm to Goldenhot and Sound Around, for which they have no adequate remedy at law.  Unless enjoined, the Keenray Defendants will continue their unlawful use, further injuring Goldenhot and Sound Around.

143.     On information and belief, the Keenray Defendants have received revenues and profits as a result of its unlawful use, to which the Keenray Defendants are not entitled, and Goldenhot and Sound Around have suffered damages as a result of the Keenray Defendants' unlawful use, for which the Keenray Defendants are responsible.

## COUNT VII

## DECEPTIVE TRADE PRACTICES IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

### (Goldenhot and Sound Around)

144.     The preceding Paragraphs are incorporated as if fully set forth herein.

145.     The Keenray Defendants' use of Goldenhot's ETL Control Number and the ETL Logo Trademark in connection with their towel warmer products violates New York General Business Law Section 349 because they are likely to confuse, and may have already confused, the general public as to the Keenray Defendant's rights in the ETL Control Number and ETL Logo Trademark and/or as to the nature, characteristics and/or qualities of the Keenray towel warmer products.

146.     The Keenray Defendants' conduct is unlawful and in violation of Section 349 because it violates, among others, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) as described above.

147.     On information and belief, the Keenray Defendants' conduct as set forth herein has been and continues to be willful, deliberate and in bad faith.

148.     The Keenray Defendants' violation of the statute has caused and will continue to cause irreparable harm to Goldenhot, Sound Around and the public, for which the Plaintiffs have no adequate remedy at law. Unless enjoined, the Keenray Defendants will continue their deceptive practices, further injuring Goldenhot and Sound Around, and confusing the public.

149.     On information and belief, the Keenray Defendants have received substantial revenues and profits as a result of their deceptive practice, to which the Keenray Defendants are not entitled, and Goldenhot and Sound Around have suffered damages as a result of the Keenray Defendants' deceptive trademark practices, for which Plaintiffs are not responsible.

150.     As a direct, proximate and foreseeable result of the Keenray Defendants' wrongful conduct as alleged above, Plaintiffs have been injured and have lost, and continue to lose, income they otherwise would have received from consumers.  Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by CLI as a result of its deceptive trademark practices.

**COUNT VIII**

**FALSE ADVERTISING IN VIOLATION OF
NEW YORK GENERAL BUSINESS LAW § 350**

151.     The preceding Paragraphs are incorporated as if fully set forth herein.

152.     The Keenray Defendants' use of Goldenhot's ETL Control Number and the ETL Logo Trademark in connection with their towel warmer products violates New York General Business Law Section 350 because they are misleading in material respect as to the Keenray

Defendants' rights in the ETL control number and ETL Logo Mark, and as to the nature, characteristics and/or qualities of the Keenray towel warmer products.

153.    On information and belief, the Keenray Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate and in bad faith.

154.    The Keenray Defendants' violation of the statute has caused and will continue to cause irreparable harm to Goldenhot, Sound Around, and the public, for which the Plaintiffs have no adequate remedy at law. Unless enjoined, the Keenray Defendants will continue to use the Goldenhot ETL Control Number and ETL Logo Trademark, further injuring Goldenhot and Sound Around, and confusing the public.

155.    On information and belief, the Keenray Defendants have received substantial revenues and profits as a result of their acts of false advertising, to which the Keenray Defendants are not entitled, and Goldenhot and Sound Around have suffered damages as a result of the Keenray Defendants' acts of false advertising, for which Plaintiffs are not responsible.

156.    As a direct, proximate and foreseeable result of the Keenray Defendants' acts of false advertising, as alleged above, Plaintiffs have been injured and have lost, and continue to lose, income they otherwise would have received from consumers.  Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by CLI as a result of its acts of false advertising.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sound Around prays that judgment be entered:

A.      Declaring that Sound Around's SA Towel Warmer does not infringe upon any patent rights of Defendants, namely, U.S. Patent No. D952,810 S;

B.      Declaring Keenray's U.S. Patent No. D952,810 S invalid and unenforceable because (1) Wu is not the true inventor of the claimed design; (2) the design was available from a third-party before Wu "invented" the design; and (3) the Keenray Defendants failed in their duty of candor to the U.S. Patent Office or, alternatively, correcting the inventorship and restoring the ownership of the '810 patent to Goldenhot.

C.      For preliminary and permanent injunctive relief against the Keenray Defendants, including without limitation enjoining them from requesting that Amazon and others delist, block, or remove any of Plaintiff's products on the basis of IP infringement;

D.      Ordering the Keenray Defendants to inform Amazon that Keenray's complaints against Sound Around are withdrawn, and that Amazon should re-list the Sound Around SA Towel Warmer;

E.      Ordering Amazon, in the event that the Keenray Defendants fail to comply with a Court Order (as set forth in the preceding paragraph) to withdraw the Keenray Defendants' allegation of infringement against Sound Around, to re-list the Sound Around ASIN for the SA Towel Warmer product;

F.      For actual damages in such amount as may be found, or otherwise permitted by law.

G.      For an accounting of and the imposition of a constructive trust with respect to the Keenray Defendants' sales on Amazon to capture the gains secured by and through Defendants' fraudulent activity.

H.      Declaring Plaintiff as the prevailing party, and this case as exceptional, and awarding to Plaintiff its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285 or any other applicable statute or law.

I.      That the Keenray Defendants be ordered to pay all fees, expenses, and costs associated with this action;

J.      That Defendants be required to pay trebled damages because this is an exceptional case; and

K.      Ordering that Sound Around be granted such other and further relief as the Court may deem just and proper.


Dated:  July 19, 2023                    /s/Max Moskowitz
                                         Max Moskowitz
                                         Ariel Peikes
                                         OSTROLENK FABER LLP
                                         845 Third Avenue, 17th Floor
                                         New York, New York 10022
                                         mmoskowitz@ostrolenk.com
                                         apeikes@ostrolenk.com
                                         Telephone: (212) 596-0500
                                         Facsimile: (212) 382-0888

                                         *Attorneys for Plaintiffs*
                                         *Sound Around, Inc., and*
                                         *Goldenhot Plastic & Hardware Products Co., Ltd*

{02863726.1}                             33