UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

SOUND AROUND INC. and DONGGUAN           :
GOLDENHOT PLASTIC & HARDWARE            :
PRODUCTS CO., LTD,                      :
                                        :        REPORT AND
                          Plaintiffs,   :        RECOMMENDATION
                                        :
          -against-                     :        22-CV-6943 (HG)(MMH)
                                        :
SHENZEN KEENRAY INNOVATIONS             :
LIMITED and U.S. PATENT NO. D952,810 S, :
*in rem*,                               :
                                        :
                          Defendants.   :

------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

In a consolidated action, Plaintiffs Sound Around Inc. ("Sound Around") and

Dongguan Goldenhot Plastic & Hardware Products Co., Ltd. ("Goldenhot") sued, *inter alia*,

Defendant Shenzen Keenray Innovations Limited ("Keenray") and *in rem* Defendant U.S.

Design Patent No. D952,810 S (the "'810 Patent"), seeking, *inter alia*, a declaratory judgment

that the '810 Patent is invalid or unenforceable, and an order modifying the '810 Patent to

change the inventor of record. (*See generally* 2d Am. Compl., ECF No. 90; *Sound Around

Inc. v. Shenzhen Keenray Innovations Ltd.*, No. 22-CV-6943 (E.D.N.Y.) ("*Sound Around*");

*Dongguan Goldenhot Plastic & Hardware Products Co. v. Shenzhen Keenray Innovations

Ltd.*, No. 23-CV-3289 (E.D.N.Y.) ("*Dongguan*").)[1] Before the Court are Plaintiffs' motion for

summary judgment (ECF No. 100) and the parties' competing submissions on claim

---

[1] All citations to documents filed on ECF are to the *Sound Around* docket and the ECF document number and pagination in the ECF header unless otherwise noted. Citations to the Local Civil Rules are to the Rules as of July 1, 2024, the operative rules when the instant motion was filed.

construction.  (*See* ECF Nos. 62, 64, 69, 71.)  The Honorable Hector Gonzalez referred the motion and claim construction submissions for report and recommendation.  For the reasons set forth below, the Court respectfully recommends that Keenray's proposed construction should be adopted and that Plaintiffs' motion for summary judgment should be **denied**.

## I.    BACKGROUND

This case is about an electric towel warmer, and the firms involved in its design, manufacture, export from China, and import into the United States.

### A.    Undisputed Facts[2]

Sound Around, a New York corporation, imports goods including electronics and housewares from Asia and sells them on e-commerce marketplaces such as Amazon, Walmart, Wayfair, eBay, and Home Depot.  (*See* Brach Dep., ECF No. 100-21 at 21:15–25, 22:17–20.)[3] Goldenhot is a Chinese engineering and manufacturing company that sells its products (e.g., towel warmers) exclusively to wholesale buyers, including Sound Around.  (*See* 2d Am. Compl., ECF No. 90 ¶ 20; Answer, ECF No. 92 ¶ 20; Pls.' 56.1 Stmt., ECF No. 100-2 ¶ 22; Zhao Dep., ECF No. 100-17 at 17:2–8, 21:6–23; 25:2–11.)  Mr. Xiuhua Zhao is the principal owner and general manager of Goldenhot; Mr. Weiqi Chao is its vice president and chief engineer.  (Pls.' 56.1 Stmt., ECF No. 100-2 ¶ 6.)  Ms. Fengli "Helen" Lv, the only Goldenhot

---

[2] The Court has considered the parties' declarations (including those cited in the summary judgment briefing but located elsewhere on the docket), attached exhibits, and the Local Civil Rule 56.1 Statements of Facts.  The Court construes the facts in the light most favorable to the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).  Unless otherwise noted, the parties consider the following facts undisputed, or the opposing party has not proffered evidence in the record to dispute them.

[3] Citations to deposition transcripts are to the page and line number corresponding with the original transcript.

2

employee who speaks English, is responsible for the firm's business outside of China.  (*See* Lv Decl., ECF No. 100-22 ¶ 3; Lv Dep., ECF No. 102-13 at 6:22–25.)

Keenray is a Chinese corporation whose principal owner is Mr. Weng Feng Peng.  (Pls.' 56.1 Stmt., ECF No. 100-2 ¶ 3; Def.'s 56.1 Opp., ECF No. 102-1 ¶ 3.)  Mr. Peng is married to Ms. Danxia Wu, who works at Keenray with him.  (*See* Wu Dep. at 16:17–19, 20:12–15; Peng Dep., ECF No. 100-16 at 18:2–7, 32:7–11.)[4]  Mr. Jinzhou Fang is a shareholder-employee of Keenray.  (*See* ECF No. 102-18 ¶ 2.)

Goldenhot designed the towel warmer Model E1819 depicted in Figure A below in 2017 or 2018, and this model was sold on the market beginning in approximately 2018.  (*See* Chao Dep., ECF No. 100-18 at 16:1–17:5.)  At some point, Goldenhot also manufactured the towel warmer known to Goldenhot as Model E1819N and known to Keenray as model CL1, depicted in Figure B below and in the '810 Patent (the "Disputed Product").  (*See* Zhao Dep., ECF No. 100-17 at 51:22–52:11; Def.'s 56.1 Opp., ECF No. 102-1 ¶ 13.)  Sound Around purchased the Disputed Product from Goldenhot and offered it on Amazon under the identification number B0961BDJPX.  (*See* 2d Am. Compl., ECF No. 90 ¶ 64; Answer, ECF No. 92 ¶ 64; Lv Decl., ECF No. 100-22 ¶ 1.)

---

[4] Plaintiffs and Defendant each submit excerpts of Ms. Wu and Mr. Peng's deposition transcripts. (*See* ECF Nos. 100-15, 102-4 ("Wu Dep"); ECF No. 100-16, 102-3 ("Peng Dep.").)  The Court cites to Ms. Wu and Mr. Peng's deposition transcripts as if they were each one document.

**Figure A**

Goldenhot Model E1819



**Figure B**

Goldenhot Model E1819N /
Keenray Model CL1



(2d Am. Compl., ECF No. 90 ¶¶ 22, 91.)

On or about November 9, 2020, Keenray, through attorney Zhihua Han of Wen IP LLC, applied for the '810 Patent from the United States Patent and Trademark Office ("PTO").  (*See* '810 Patent Appl., 2d Am. Compl. Ex. G, ECF No. 90-7.)[5]  The '810 Patent lists Ms. Wu as the inventor and states the sole claim as "the ornamental design for a blanket towel warmer as shown and described."  (Pls.' 56.1 Stmt., ECF No. 100-2 ¶ 8; Def.'s  56.1 Opp., ECF No. 102-1 ¶ 8; '810 Patent, 2d Am. Compl. Ex. B, ECF No. 90-2 at 2.)  The specification in the '810 Patent Application states:

---

[5] The parties' motion papers and the Court herein cite to the '810 Patent and application attached to the Second Amended Complaint, which are incorporated by reference in that pleading.  (2d Am. Compl., ECF No. 90 ¶ 25; *Id.* Exs. B, G, H & I, ECF Nos. 90-2, 90-7, 90-8 & 90-9; *see also* Answer, ECF No. 92 ¶ 25 (Keenray's admission).)

> I, Danxia Wu, have invented a new, original, and ornamental design for a Blanket Towel Warmer, entitled "Blanket Towel Warmer [sic] of which the following is a specification.  Reference is made to the accompanying drawings which form a part hereof, the figures of which are described below.

(*See* '810 Patent Appl., 2d Am. Compl. Ex. G, ECF No. 90-7 at 10.)   A section entitled "Description of the Drawings" lists Figures 1–10 as "the accompanying drawings which form a part hereof."  (*Id.*)  The images depict the blanket towel warmer from several "photographic" views: (1) front, rear, left, and right side elevation views (Figures 1–4); (2) top and bottom plan views (Figures 5–6); (3) top front and top rear perspective views (Figures 7–8); and (4) bottom rear and bottom front perspective views (Figures 9–10).  (*Id.* at 11–20; *see also* Appendix A, *infra*.)  In general correspondence accompanying the application, Han stated that the images were "black and white photographs of the Blanket Towel Warmer design" because "[i]t would be difficult to convey the design elements of the Blanket Towel Warmer with line drawings" and the photographs "best demonstrate the design features."  ('810 Patent Appl., 2d Am. Compl. Ex. G, ECF No. 90-7 at 3.)   On May 31, 2021, Han submitted a substitute specification which eliminated all references to the term "photographic."  (*See* ECF No. 64-5 at 4–5.)

On March 14, 2022, a patent examiner rejected Keenray's application because on September 3, 2020, two months before Keenray's filing, a towel warmer with a design "substantially the same as the claimed design" in the application was displayed in a YouTube video entitled "Keenray Towel Warmer: An incredible product to pamper yourself & family!".  (*See* '810 Patent Appl., 2d Am. Compl. Ex. I, ECF No. 90-9 at 13.)  In response to the rejection, Ms. Wu submitted a sworn declaration dated March 19, 2022, pursuant to 37 C.F.R. § 1.130(a), stating, *inter alia*, that: (1) she is the original inventor of the invention embodied in the patent

5

application; (2) she is a co-owner of Keenray, which sells the "'Keenray Towel Warmer' . . . on various commercial outlets and online platforms;" (3) "this prior art is a disclosure made by Inventor herself" within one year before filing the application; and (4) she assigned the application to Keenray. (*Id.* at 4.) The submission also included a Patent Assignment (the "Assignment") dated November 10, 2020, the date of the '810 Patent application, in which Ms. Wu assigned her interests in the '810 Patent and the Blanket Towel Warmer to Keenray. (*See id.* at 9–10.) The '810 Patent was awarded on May 24, 2022 with the same claim and accompanying figures as the application. (*See* Pls.' 56.1 Stmt., ECF No. 100-2 ¶ 8; Def.'s 56.1 Opp., ECF No. 102-1 ¶ 8; '810 Patent, 2d Am. Compl. Ex. B, ECF No. 90-2 at 2; Pls.' Mot. Ex. L, ECF No. 100-14 at 2.)

Sometime in 2022, Keenray contacted Amazon and demanded that Amazon delist (*i.e.*, cease offering) Sound Around's "SA Towel Warmer," which Sound Around had procured from Goldenhot. (2d Am. Compl., ECF No. 90 ¶ 64; Answer, ECF No. 92 ¶ 64; *see* Lv Decl., ECF No. 100-22 ¶ 1.) "The basis of Keenray's complaint to Amazon was that Sound Around's SA Towel Warmer infringes upon the '810 Patent." (2d Am. Compl., ECF No. 90 ¶ 65; Answer, ECF No. 92 ¶ 65.)

### B.    Procedural History

Sound Around sued Keenray, Ms. Wu, Mr. Peng, and Amazon on November 14, 2022, seeking a declaratory judgment on the validity of the '810 Patent and asserting claims of unfair competition and tortious interference under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (*See generally* Compl., ECF No. 1.) On the same day, Sound Around moved for a preliminary injunction and temporary restraining order (ECF No. 9), which the Court granted in part. (*See generally* ECF Nos. 23–24.) Soon thereafter, Sound Around voluntarily dismissed its claims

against Amazon.  (*See* ECF No. 20; Nov. 28, 2022 Order.)  Months later, on May 1, 2023, Goldenhot separately sued Keenray, Shenzen Jinglei Chuangxin Youxian Gongsi (a Keenray affiliate), and the '810 Patent, *in rem*, seeking correction of the inventor and ownership information associated with the '810 Patent and asserting claims of unfair competition, false advertising, and deceptive trade practices.  (*See generally* Compl., *Dongguan*, ECF No. 1.)  On June 23, 2023, the Court consolidated the two actions, granted Ms. Wu and Mr. Peng's motion to dismiss, and directed the parties to file a consolidated amended complaint.  (*See generally* ECF Nos. 39, 42–43.)

In an amended pleading on July 19, 2023, Sound Around and Goldenhot combined their respective claims and sued Keenray, Mr. Peng, and the '810 Patent, *in rem*.  (*See generally* Am. Compl., ECF No. 44 ¶¶ 89–156.)  Keenray asserted a counterclaim against Plaintiffs alleging infringement of the '810 Patent.  (*See generally* Counterclaim, ECF No. 57.)  Plaintiffs answered the counterclaim on October 20, 2023 and included "crossclaims" against Keenray that largely mirror the patent-related allegations included in the Amended Complaint.  (*See* Answer to Counterclaim, ECF No. 58 ¶¶ 1–14.)  On July 23, 2024, the Court denied Keenray's motion to dismiss the Amended Complaint (ECF No. 56) and granted Plaintiffs' motion to amend.  (*See* July 23, 2024 Order.)

Plaintiffs filed the operative Second Amended Complaint against Keenray, Mr. Peng, and the '810 Patent on August 1, 2024, seeking: (1) a declaratory judgment that Sound Around's towel warmer does not infringe on the '810 Patent because the '810 Patent is invalid, (2) correction of the inventor and ownership information associated with the '810 Patent, and (3) damages for alleged unfair competition, tortious interference, false advertising, and deceptive trade practices, in violation of the Lanham Act, common law, and/or New York law.

(ECF No. 90.)   On September 6, 2024, Keenray filed its Answer.  (ECF No. 92.)   On September 8, 2024, the parties agreed to dismiss Mr. Peng as a defendant.  (*See* ECF No. 93.)

The parties submitted claim construction briefs in December 2023 and January 2024.  (*See* ECF Nos. 62, 64, 69, 71).  Judge Gonzalez referred the claims construction submissions for a report and recommendation.  (Sept. 23, 2024 Order Referring Motion.)  Meanwhile, the parties unsuccessfully attempted to settle the case in March and June 2024.  (*See generally* ECF No. 79 at 2–3; June 11, 2024 Min. Entry.)  When those efforts failed, Plaintiffs moved for summary judgment in November 2024.  (Mot., ECF No. 100.)  Judge Gonzalez referred that motion for report and recommendation.  (Nov. 15, 2024 Order Referring Mot.)  The motion was fully briefed as of December 27, 2024.  (*See generally* Def.'s Opp., ECF No. 102; Pls.' Reply, ECF No. 104.)  The Court held a hearing on all submissions on May 14, 2025, and reserved decision.  (*See* May 14, 2025 Min. Entry; Tr., ECF No. 107.)

## II.   LEGAL STANDARDS[6]

### A.   Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (cleaned up).  "[I]n assessing the record to determine whether there is

---

[6] "When deciding issues in a patent case, a district court applies the law of the Circuit in which it sits to non-patent issues and the law of the Federal Circuit to issues of substantive patent law." *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11-CV-6909 (KPF), 2015 WL 3947178, at *4 n.6 (S.D.N.Y. June 29, 2015) (citing *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999)), *aff'd*, 654 F. App'x 481 (Fed. Cir. 2016).

a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (cleaned up).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *Id.* "If the moving party carries its initial burden, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (internal quotation marks omitted). In assessing the summary judgment evidence, the Court's role "is to identify factual issues, not to resolve them." *In re Dana Corp.*, 574 F.3d 129, 156 (2d Cir. 2009).

"A party asserting that a fact cannot be or is genuinely disputed must . . . cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also McKinney*, 49 F.4th at 738 ("Thus, rather than merely deny the moving party's allegations in a general way, the party opposing summary judgment must present competent evidence that creates a genuine issue of material fact.") (cleaned up).

## B.    Design Patent Infringement

"A design patent protects a 'new, original and ornamental design for an article of manufacture.'" *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1291 (Fed. Cir. 2024) (quoting 35 U.S.C. § 171(a)). "'Design patents . . . only protect the original, nonfunctional aspects of an ornamental design as shown in the patent.'" *Samtech LLC v. Brooklyn Armed Forces, LLC*, No. 23-CV-1185 (NCM)(RML), 2025 WL 2960014, at *3 (E.D.N.Y. Oct. 20, 2025) (quoting *Star Tech. Int'l Ltd. v. Latham Pool Prods., Inc.*, No. 2023-

2138, 2025 WL 1189919, at *2 (Fed. Cir. Apr. 24, 2025)).  "Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design" to determine whether the accused design is substantially similar.  *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020) (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995)).

First, claim construction is a question of law to be determined by the Court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (citing *Elmer*, 67 F.3d at 1577).  "[V]erbal characterization of the claimed designs" in a design patent is within courts' discretion, but "a detailed verbal description of the claimed design" is not required.  *Egyptian Goddess*, 543 F.3d at 680.  "[A] district court may use claim construction to help guide the fact finder through issues that bear on claim scope . . . for example, where the court help[s] the fact finder 'distinguish[ ] between those features of the claimed design that are ornamental and those that are purely functional.'"  *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (quoting *Egyptian Goddess*, 543 F.3d at 680, which in turn cites *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).

Second, "[t]o prove infringement, a patentee must show that to an ordinary observer the accused design and the claimed design are 'substantially the same.'"  *Top Brand LLC v. Cozy Comfort Co.*, 143 F.4th 1349, 1358 (Fed. Cir. 2025) (quoting *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871) and citing *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010)).  This "ordinary observer" test requires an analysis of whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives . . . the

10

resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (quoting *Egyptian Goddess*, 543 F.3d at 670).

Notwithstanding the foregoing, "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011) (quoting 35 U.S.C. § 282). An accused infringer must prove invalidity by clear and convincing evidence. *See id.*

## III.    CLAIM CONSTRUCTION ANALYSIS

As noted, the '810 Patent claim states: "The ornamental design for a blanket towel warmer, as shown and described." ('810 Patent, 2d Am. Compl. Ex. B, ECF No. 90-2 at 2.) The parties have each proposed nearly identical descriptions for purposes of claim construction:

| Plaintiffs | Keenray |
|---|---|
| The ornamental design for a blanket towel warmer, as shown and described in FIG. 1–10. | The ornamental design for a blanket towel warmer, as shown and described in Fig. 1–10. The "gray coloring and patterns" represent the degree of shading, not surface ornamentation. |

(ECF No. 69 at 4.)

Keenray argues that its proposal explains the purpose of Plaintiffs' "asserted coloring and surface shape shown in the drawings" of the '810 Patent. (ECF No. 62 at 3.) Specifically, Keenray contends that the figures in the '810 Patent are grayscale drawings that should not be considered an integral part of the '810 Patent, and are "merely a byproduct of how grayscale drawings are produced." (*Id.* at 3–4.) Further, according to Keenray's expert, former patent

examiner Jim Gandy, "nowhere in the file history of the '810 Patent is there any indication that the examiner questioned whether the gray coloring and pattern on the surface of the article was an integral part of the claimed design[.]"  (Gandy Decl., ECF No. 62-4 ¶ 19.)

Plaintiffs argue that the '810 Patent's drawings are "unusual" because design patent drawings are usually presented as line drawings.  (ECF No. 64 at 3 (citing 37 C.F.R. § 1.84).)  Plaintiffs claim that the figures in the '810 Patent are photographs but also describe the figures as having "the same surface patterns and contour lines."  (*Id.* at 2.)  Plaintiffs also disagree with Gandy, Keenray's expert, and argue that photographs are "not ordinarily permitted," that it "would have been the epitome of simplicity" to submit line drawings instead to avoid this claim construction confusion, and "[t]he drawings speak for themselves."  (*Id.* at 2–5.)

The Court respectfully recommends adopting Keenray's construction: "The ornamental design for a blanket towel warmer, as shown and described in FIG. 1–10.  The 'gray coloring and patterns' represent the degree of shading, not surface ornamentation."  (ECF No. 69 at 4.)  Importantly, courts have approved a similarly worded claim construction for a design patent.  *See, e.g.*, *Saverglass, Inc. v. Vitro Packaging, LLC*, 130 F. Supp. 3d 747, 753 (E.D.N.Y. 2015) ("The '197 patent is directed to the ornamental design of a bottle as illustrated in FIGS. 1–7.  Oblique lines shown on the surfaces of the bottle in FIGS. 1–7 represent shading and contour lines, not surface ornamentation."); *Samtech*, 2025 WL 2960014, at *2 ("The '641 Patent claims the ornamental design for a military jacket, as shown and described in FIGS. 1–16 and accompanying written description of the '641 Patent. . . . Surface lines shown on the surface of the jacket in FIGS. 1–16 represent surface shading, not surface ornamentation.")  Moreover, the Court agrees that Keenray's construction will help guide the fact finder by explaining the purpose of the coloring and pattern/shading on the surface.  *See Samtech*, 2025 WL 2960014,

at *5 ("The Code of Federal Regulations provides that '[a]ppropriate and adequate surface shading should be used to show the character or contour of the surfaces represented.'") (quoting 37 C.F.R. § 1.152)). This construction is also appropriate because Plaintiffs' contention that the '810 Patent figures contain "contour lines" can only be true if the coloring and patterns in the figures depict shading and not surface ornamentation.

In contrast, Plaintiffs' arguments are not persuasive. Plaintiffs urge the Court to rely on the "ordinary observer test" at step two of the design patent infringement analysis, but that test is for "determining whether the accused design is substantially similar in appearance to the patented design." *Saverglass*, 130 F. Supp. 3d at 752 (citing *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11-CV-7211 (PGG), 2012 WL 3031150, at *4–6 (S.D.N.Y. July 25, 2012)). At this point, the Court is only concerned with step one of the analysis: claim construction. Further, although Plaintiffs appear to suggest that the figures in the '810 Patent depict particular surface patterns (*see* ECF No. 64 at 4), the Court is unable to discern a particular surface pattern in the figures. Instead, the appearance is consistent with grayscale drawings, *i.e.*, "a black and white image with shades of gray" where "[b]lack would be the darkest shade of gray and white the lightest shade with many shades of gray in between." (Gandy Decl., ECF No. 62-4 ¶ 18.) Finally, Plaintiffs' remaining arguments are vague and unsupported by any case law.

For these reasons, the Court respectfully recommends the following construction of the '810 Patent's claim: "The ornamental design for a blanket towel warmer, as shown and described in FIG. 1–10. The 'gray coloring and patterns' represent the degree of shading, not surface ornamentation."

## IV.   EVIDENTIARY RULINGS

In opposition to Plaintiffs' motion for summary judgment, Keenray moves to strike or asks the Court to disregard portions of Plaintiffs' proffered evidence.  (*See* Def.'s Opp., ECF No. 102 at 8–16.)   In reply, Plaintiffs offer substantive responses to some of Keenray's objections.  (*See* Pls.' Reply, ECF No. 104 at 8–10.)

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "'A submission in opposition to (or in support of) summary judgment need be considered only to the extent that it would have been admissible at trial.'"  *Doe ex rel. Doe v. Whelan*, 732 F.3d 151, 157 n.8 (2d Cir. 2013) (quoting *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013)).  "The burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated."  *Wright v. Undercover Officer #84*, No. 15-CV-4498 (VSB), 2018 WL 4042101, at *3 (S.D.N.Y. Aug. 22, 2018) (citing *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 46 (2d Cir. 2015)).

### A.   Plaintiffs' Rule 56.1 Statement

Keenray asserts that the Court should disregard portions of Plaintiffs' Local Civil Rule 56.1 Statement as argumentative and for relying on inadmissible evidence.  (Def.'s Opp., ECF No. 102 at 14–16.)   Plaintiffs respond that Keenray does not explain how striking any of Plaintiffs' statements would undermine any of Plaintiffs' "dispositive factual showings." (Pls.' Reply, ECF No. 104 at 9.)

The Local Civil Rules of this court require a motion for summary judgment to include "a separate, short, and concise statement . . . of the material facts as to which the moving party contends that there is not genuine issue to be tried."  Loc. Civ. R. 56.1(a) (July 1, 2024).

14

Evidence supporting proposed undisputed facts in the Rule 56.1 statement must be admissible. *Id.* R. 56.1(d).  Therefore, "issues in a Rule 56.1 Statement may oblige the court to consider the underlying record and disregard the statements made in the 56.1 Statement"—for example, when assertions in the Rule 56.1 statement are contradicted by the evidentiary record or when a party contradicts itself in the Rule 56.1 statement, the record governs.  *Cotnoir-Debenedetto v. Uniondale Union Free Sch. Dist.*, No. 20-CV-5096 (NGG)(AYS), 2023 WL 4274701, at *4 (E.D.N.Y. June 29, 2023) (collecting cases).  Legal conclusions and citations to the Complaint cannot dispute a statement of fact.  *Id.*

Plaintiffs' Rule 56.1 Statement is deficient because it ignores the Local Civil Rule 56.1 requirement that "each statement by the movant or opponent under Rule 56.1(a) . . . must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)."  Loc. Civ. R. 56.1(d) (July 1, 2024).  For example, Plaintiffs cite to the Second Amended Complaint, "the entire discovery and court records," and "the entire case record" in support of many "undisputed" facts.  (*See* Pls.' 56.1 Stmt., ECF No. 100-2 ¶¶ 1–5, 7–10, 12, 19–21, 43, 50, 60–63.)  Moreover, many of Plaintiffs' statements cite to evidence that the Court disregards on summary judgment for the reasons discussed below—*e.g.*, Chinese-language documents without certified translations.  (*See id.* ¶¶ 4, 11, 14, 18–21, 23–25, 44, 48, 49, 55.)  Further, the Court properly disregards Plaintiffs' statements of undisputed "facts" "to the extent that the statements couch legal argument and analysis as fact and offer legal conclusions."  *A.B. by Alverez v. United States*, No. 16-CV-2554 (LMS), 2019 WL 10302175, at *2 (S.D.N.Y. Apr. 17, 2019) (collecting cases).  Specifically, Plaintiffs offer arguments and legal conclusions about witness credibility and the purported lack of documentation supporting Keenray's defenses, among other topics.  (*See* Pls.' 56.1 Stmt., ECF No. 100-2 ¶¶ 25, 36, 43,

45, 50, 59.)   Such arguments are not appropriate for a Rule 56.1 Statement proposing undisputed material facts.

Accordingly, the Court disregards paragraphs in Plaintiffs' Rule 56.1 Statement that do not comply with Local Civil Rule 56.1, including those paragraphs citing the Second Amended Complaint, unless the proffered facts rely on otherwise admissible evidence or Keenray has admitted these facts.

### B.      Chinese-Language Documents

Keenray also argues that Plaintiffs' Exhibits A, B, and part of Exhibit K, written primarily in Chinese, should be stricken for failure to provide any English translations or for including uncertified translations.  (*See* Def.'s Opp., ECF No. 102 at 9.)  Exhibits A and B are text messages written in Chinese with no English translation.  (Pls.' 56.1 Stmt. Exs. A–B, ECF Nos. 100-3 to 100-4.)  Exhibit K includes various emails, photographs, and other documents, some of which are in Chinese in whole or in part, with uncertified English translations.  (*Id.* Ex. K, ECF No. 100-13 at 6, 17–23, 31–33, 41–45, 52–54, 57–62, 84–89.)  Plaintiffs do not address the lack of translation and instead point to Keenray's purported failure to proffer evidence regarding Ms. Wu's role as the inventor of the Disputed Product's design.  (Pls.' Mem., ECF No. 104 at 8–9.)

"It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, No. 17-CV-6219 (RWL), 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020) (quoting *Chen v. Wai? Café, Inc.*, No. 10-CV-7254 (JCF), 2016 WL 722185, at *6 n.5 (S.D.N.Y. Feb. 19, 2016)).  "A certified translation is one to which the author swears that the contents are true and accurate and also swears to his or her identity and qualifications to translate the relevant

languages." *Gonzalez v. Cheesecake Factory Rests., Inc.*, No. 21-CV-5017 (PKC)(SIL), 2023 WL 2477697, at *1 (E.D.N.Y. Mar. 13, 2023) (quoting *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 555 n.9 (S.D.N.Y. 2013)).

"The [Chinese]-language documents are inadmissible and will not be considered by the Court." *Heredia*, 2020 WL 3961618, at *5. For the documents with partial translations, Plaintiffs do not offer sufficient evidence of certified translations. For example, Ms. Lv swears that she reviewed "Exhibits A through L of Plaintiffs' motion [(ECF Nos. 100-3 to 100-14)]," that the English translations "were provided [] by the Defendant Keenray with a verification that they are true and correct translations," and that she translated "some of the text." (Lv Decl., ECF No. 100-22 ¶ 6.) Exhibits A through L comprise 124 pages of the summary judgment record. Ms. Lv does not identify which translations she prepared and which were written by Keenray's translator, nor does she swear to the accuracy of her translations. (*See id.*) Similarly, at oral argument, Plaintiffs' attorney, Max Moskowitz, stated that he translated some of the documents, but did not identify these documents, explain his qualifications to translate written Chinese, or swear that his translations are true and accurate. (*See* Tr., ECF No. 107 at 17:13–14.) For these reasons, the Court will not consider the contested portions of Exhibits A, B, and K.

That said, Plaintiffs' Rule 56.1 Statement cites to Chinese-language documents elsewhere on the docket which include certified translations. (*See* Pls.' 56.1 Stmt., ECF No. 100-2 ¶¶ 15 (citing ECF No. 71-1), 27 (citing ECF No. 48-4, as depicted in Pls.' 56.1 Stmt. Ex. D, ECF No. 100-6), 28 (citing ECF No. 48-6, as depicted in Pls.' 56.1 Stmt. Ex. E, ECF No. 100-7), 58 (citing ECF No. 71-1).) The Court may consider these documents in deciding the instant motion.

### C.    Other Documentary Evidence

Finally, Keenray argues that several documents in Plaintiffs' Exhibit K should be stricken as inadmissible hearsay, irrelevant, and lacking metadata. (Def.'s Opp., ECF No. 102 at 9–12.)   In reply, Plaintiffs argue that many of the contested documents are "business records" and that striking these documents does not create any genuine issue of material fact about the invention of the Disputed Product's design. (Pls.' Reply, ECF No. 104 at 9.)

The Court has already disregarded part of Exhibit K for Plaintiffs' failure to attach certified translations. (*See* § IV.B, *supra*.)  However, the Court denies Keenray's application to strike additional pages from Exhibit K.   "The ultimate probative value of a document received in evidence is a matter to be assessed by the jury."  *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez*, 147 F.4th 73, 100 (2d Cir. 2025).  Further, "the factual content of the challenged pieces of evidence could be presented in admissible form at trial." *Kwok Kai Lo v. Prabhu*, No. 16-CV-7623 (JCM), 2019 WL 176706, at *3 (S.D.N.Y. Jan. 11, 2019).   For example, records custodians from Goldenhot can testify as to the creation and maintenance of these documents as business records under Federal Rule of Evidence 803(6). *See id.*  For these reasons, Keenray's remaining objections to Exhibit K are overruled.[7]

## V.    SUMMARY JUDGMENT ANALYSIS

Plaintiffs argue that the '810 Patent is invalid because Ms. Wu did not invent the Disputed Product and Keenray engaged in inequitable conduct to obtain the '810 Patent from

---

[7] Keenray also argues that Ms. Lv's declaration should be stricken because she lacks personal knowledge and has testified inconsistently about some exhibits. (*See* Def.'s Opp., ECF No. 102 at 12–14.)  Plaintiffs do not offer a substantive responsive to this objection. (*See generally* Pls.' Reply, ECF No. 104.)  The Court will not make credibility determinations on summary judgment because resolving conflicting testimony is a matter for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

18

the PTO.  (*See* Pls.' Mem., ECF No. 100-1 at 10–19.)  Plaintiffs request that the Court assign

the '810 Patent to Goldenhot or add Goldenhot as a co-inventor.  (*Id.* at 20).  Plaintiffs also

seek summary judgment on their Lanham Act claims that Keenray made fraudulent statements

to Amazon to delist the Disputed Product and improperly labeled and displayed Goldenhot's

ETL certification number on Keenray's products.  (*See id.*)  As set forth below, genuine

disputes of material fact preclude summary judgment on all claims.[8]

### A.    Inventorship

Courts apply the same standard of inventorship to design patents as for utility patents.

*Hoop v. Hoop*, 279 F.3d 1004, 1007 (Fed. Cir. 2002).  "An inventor under the patent laws is

the 'person or persons who conceived the patented invention.'"  *Id.*  (quoting *C.R. Bard, Inc.

v. M3 Sys.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998)).  "The test for conception is whether the

inventor had an idea that was definite and permanent enough that one skilled in the art could

understand the invention; the inventor must prove his conception by corroborating evidence,

preferably by showing contemporaneous disclosures."  *Univ. of Pittsburgh of Commonwealth

Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1298 (Fed. Cir. 2009) (citing *Burroughs

Wellcome Co. v. Barr Lab'ys, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994)).  After conception,

"[a]n inventor may then 'use the services, ideas, and aid of others in the process of perfecting

his invention without losing his right to a patent.'"  *Hoop*, 279 F.3d at 1007 (quoting *Ethicon,

Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)).

---

[8] Plaintiffs also appear to argue that Keenray may not advance its counterclaim for patent infringement because, given the '810 Patent's invalidity, Keenray does not have standing. (*See* Pls.' Mem., ECF No. 100-1 at 19–20.)  While it is unclear whether Keenray still advances that counterclaim (ECF No. 57), Plaintiffs' request for summary judgment on the counterclaim should be denied for the same reasons as its invalidity arguments should be rejected.

Patent modification under 35 U.S.C. § 256 is "a cause of action [for] interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1324 (Fed. Cir. 2009) (quoting *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997)). However, "[t]he named inventors are presumed correct, and the party seeking correction of inventorship must show by clear and convincing evidence that a joint inventor should have been listed." *Blue Gentian, LLC v. Tristar Prods., Inc.*, 70 F.4th 1351, 1357 (Fed. Cir. 2023) (citing *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004)).

Plaintiffs fail to meet their burden. According to Plaintiffs, Mr. Zhao and Mr. Chao led the Goldenhot team who designed the E1819N in 2019. (*See* Zhao Dep., ECF No. 100-17 at 52:13–25.) Mr. Zhao met Mr. Fang, Keenray's shareholder-employee, sometime in the second half of 2019. (*See* Zhao Dep., ECF No. 100-17 at 20:17–21; ECF No. 60-3 ¶ 3.) Mr. Fang visited Goldenhot, where Mr. Zhao recommended Goldenhot's towel warmer line. (*See* Zhao Dep., ECF No. 100-17 at 20:23–21:13.) Among other products, Mr. Fang viewed the E1612 and E1819 models. (*See id.* at 21:14–22:6.) As early as February 6, 2020, Ms. Lv was soliciting orders for the E1819N from Goldenhot's customers. (*See* ECF No. 59-1 ¶ 3; Pls.' Mot. Ex. K, ECF No. 100-13 at 3–16.) Mr. Zhao asked Mr. Peng, Keenray's owner, to apply for a United States Patent for the E1819N on Goldenhot's behalf. (*See* Zhao Dep., ECF No. 100-17 at 47:20–48:24.) On November 19, 2020, Mr. Zhao wrote Mr. Peng on WeChat: "Mr. Peng, please apply for the design patent on our towel bucket in the U.S. as soon as possible." (Pls.' Mot. Ex. E, ECF No. 100-7; ECF No. 48-6 at 6.) Additionally, Mr. Chao, Goldenhot's chief engineer, examined Keenray's version of the Disputed Product and found it to be "99 percent identical to [Goldenhot's] product." (*See* Chao Dep., ECF No. 100-18 at

20

21:1–22:10.)  Plaintiffs also proffer documents purporting to show emails to its customers in early 2020 about the Goldenhot towel warmer, before Keenray's patent application.  (*See* Pls.' Mot. Ex. K, ECF No. 100-13 at 3–16.)

Keenray, in turn, proffers deposition testimony of Mr. Peng and Ms. Wu in which they assert that Ms. Wu invented the Disputed Product's design.  (*See* Def.'s Opp., ECF No. 102 at 16–17.)  According to Ms. Wu, she designed the Disputed Product in September, October, or December 2019.  (*See*, *e.g.*, Wu Dep. at 25:3–5 and 36:22–25 (testifying that the design date was September or October 2019); *see also* ECF No. 39-3 ¶ 18 (Feb. 7, 2023 Wu affidavit stating design date of December 2019).)  Although she is not artistic enough to create three-dimensional drawings of physical objects, she designed the Disputed Product by discussing the design with her husband Mr. Peng and by making rough sketches on paper.  (*See* Wu Dep. at 20:5–7, 25:16–25.)  The drawings, which she did not save, were "as random or as casual as drawing something for [her] children" and were "not a formal drawing of anything."  (*Id.* at 26:1–8; 46:5–8.)  The inspiration for the design came from Ms. Wu's daily life, including trash cans and the wood pattern and overall "vibe" of her home.  (*Id.* at 29:25–30:7.)  The design of the base and lid were also inspired by traditional Chinese hearths.  (*Id.* at 30:8–13.)  Ms. Wu conducted Internet research for similar products when making her design but does not have records of that research.  (*Id.* at 30:14–18.)  Ms. Wu "[doesn't] believe" she designed the shape of the Disputed Product's on/off switch and did not know who designed its electrical components or pins and spokes.  (*Id.* at 39:9–25, 58:22–25, 59:23–60:2.)  Ms. Wu met Mr. Fang sometime around early 2019 and "communicated with [Mr. Fang] [her] ideas or the proposal of the [Disputed Product] design," but was not sure whether she had shown him the draft or the sketches.  (*Id.* at 26:22–27:17; 29:2–4.)  However, she thought Mr. Fang had seen

the sketches at some point. (*Id.* at 45:23–46:2.) According to Ms. Wu, "they were all my ideas, but we had some communications and discussions and [Mr. Peng and Mr. Fang] really liked what I had to say and they adopted my proposal." (*Id.* at 30:22–31:9.)

Mr. Peng testified that "the ideas and the thoughts" for the Disputed Product started in early 2019, and that his wife completed the design in approximately September or October 2019. (Peng Dep. at 25:21–26:5.) According to Mr. Peng, though Ms. Wu "is not an expert in engineering or drawing," as a woman, "she has an eye for what is aesthetic," and "she drew some very rough drawings and some figures as a draft, but those [are] no longer available." (*Id.* at 26:10–15.) When shown the drawings contained in the '810 Patent, Mr. Peng testified that Ms. Wu designed "most of it, if not all," including the details on the product's base and top. (*Id.* at 39:25–41:6.) According to Mr. Peng, Ms. Wu shared the drawings with him, and Mr. Fang also viewed them and participated in the couple's discussions. (*Id.* at 26:22–24.) At some point, Mr. Fang had been in contact with Mr. Zhao at Goldenhot, but Mr. Peng did not know whether Mr. Fang had communicated or sent Ms. Wu's draft drawings to Goldenhot. (*Id.* at 26:24–27:10.) Mr. Peng later testified that Ms. Wu's draft sketches were given to Mr. Fang "for him to communicate with Goldenhot." (*Id.* at 32:7–11.) Keenray and Goldenhot held "many meetings and discussions" regarding the design specifications of the Disputed Product—including an in-person meeting between Mr. Fang and Mr. Zhao in 2019—but he did not remember "each specific time for the meetings." (*Id.* at 30:18–31:18.) When the Keenray team completed the design, they "asked Goldenhot to make the drawing and to bring the design onto the product." (*Id.* at 41:12–14.) Mr. Zhao informed Mr. Peng that Goldenhot had shown the Disputed Product prototype to customers "but nobody had expressed the intention to place an order." (*Id.* at 65:11–12, 67:21–22.) According to Mr. Peng, "[Keenray]

22

specifically made clear to them that [the Disputed Product] is our design and [Goldenhot] can only sell this product to [Keenray]." (*Id.* at 65:13–15.) Keenray and Goldenhot jointly decided to file the '810 Patent application. (*Id.* at 41:19–22.) "Mr. Zhao from Goldenhot had asked [Mr. Peng] on multiple occasions to file for the patent application on [the Disputed Product]. [Goldenhot] did not apply for the patent themselves because this was not their design and they [knew] that it [was] [Keenray's]." (*Id.* at 41:22–42:1.)

Given the "flatly contradictory evidence relating to the matter critical for determining whether the ['810 Patent] is invalid," summary judgment is not warranted. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005). The Court rejects Plaintiffs' argument that Ms. Wu's deposition testimony "establishes" that she did not invent certain aspects of the Disputed Product design (*see* Pls.' Mem., ECF No. 100-1 at 14) because it requires the Court to opine on Ms. Wu's credibility—an inappropriate task for the Court on summary judgment. Further, drawing all reasonable inferences in Keenray's favor, a reasonable factfinder could conclude that Wu conceived of the Disputed Product's design, even if Goldenhot later reduced the idea to practice. *See Yeda Rsch. & Dev. Co. v. Imclone Sys., Inc.*, No. 03-CV-8484 (NRB), 2005 WL 2923545, at *5 (S.D.N.Y. Nov. 3, 2005) ("Questions of inventorship often involve distinguishing between 'conception,' which is the process of invention, and 'reduction to practice,' which does not entitle one to a claim of inventorship."). As Keenray correctly notes, fact disputes exist as to whether Goldenhot ever identified Mr. Zhao or Mr. Chao as inventors, as required for a patent application, and whether Mr. Zhao asked Mr. Fang to apply for a patent on Goldenhot's behalf, given that Goldenhot routinely applied for patents on its own. (*See* Def.'s Opp., ECF No. 102 at 19–21.).

23

Accordingly, the Court finds that Plaintiffs have not established by clear and convincing evidence that Ms. Wu is not the appropriate inventor on the '810 Patent or that any Goldenhot personnel should be added to the'810 Patent.  The Court thus respectfully recommends that Plaintiffs' motion for summary judgment on Counts I and III should be denied.

## B.    Inequitable Conduct

"Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO.]"  37 C.F.R. § 1.56(a).  Therefore, "[a] party asserting inequitable conduct must prove by clear and convincing evidence that a patent applicant breached that duty by (1) 'fail[ing] to disclose material information or submit[ting] materially false information to the PTO' with (2) 'intent to mislead or deceive the examiner.'"  *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 829 (Fed. Cir. 2010) (quoting *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007)).  "The accused infringer must prove both elements—intent and materiality—by clear and convincing evidence."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).  "Although it is not impermissible to grant summary judgment of inequitable conduct, [the Federal Circuit] 'urges caution' in making an inequitable conduct determination at the summary judgment stage."  *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1340 (Fed. Cir. 2006) (quoting *Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993)).

Plaintiffs argue that Ms. Wu, on Keenray's behalf, falsely represented that she is the inventor of the design depicted in the '810 Patent.  (*See* Pls.' Mem., ECF No. 100-1 at 16–19.) According to Plaintiffs, after the PTO rejected the patent application, Wu falsely stated in a

24

sworn declaration dated March 19, 2022, that she is the original inventor of the invention embodied in the patent application and that she assigned the application to Keenray.  (*Id.* at 17.)  As noted, there is a genuine factual dispute regarding whether Ms. Wu is the true inventor as listed in the '810 Patent.  (*See* § V.A., *supra*.)  Based on the same factual record, the Court concludes that Plaintiff does not present clear or convincing evidence of Ms. Wu's alleged misrepresentation about her inventorship of the design listed in the '810 Patent.

Plaintiffs also cite other alleged misrepresentations in the '810 Patent's prosecution history as evidence of inequitable conduct, to no avail.  First, Plaintiffs argue that Ms. Wu's assignment of her inventorship interest to Keenray is likely misdated, constituting fraud on the PTO.  (*See* Pls.' Mem., ECF No. 100-1 at 17–18; *see also* Pls.' Mot. Ex. L, ECF No 100-14 at 6–7).)  Plaintiffs contend that the Assignment could only have been drafted after the '810 Patent application was filed on November 10, 2020 at 11:57 p.m., and that it is unlikely Ms. Wu could have signed and submitted the document before midnight.  (*See* Pls.' Mem., ECF No. 100-1 at 17–18.)  Second, Plaintiffs argue that Keenray falsely stated on the '810 Patent application that it qualified for reduced application fees as a "micro entity."  (*See id.* at 19.)  To support these arguments, Plaintiff cite solely the '810 Patent application's prosecution history.  (*See id.* (citing Pls.' 56.1 Stmt., ECF No. 100-2 ¶ 9, which in turn cites Pls.' Mot. Ex. L., ECF No. 100-14.))  But "materiality does not presume intent, which is a separate and essential component of inequitable conduct," and "[i]ntent to deceive [cannot] be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *M. Eagles Tool Warehouse*, 439 F.3d at 1340 (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990) and *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996)).  In other words, Plaintiff offers solely the

documents in the patent application and asks the Court to infer Keenray's specific intent to deceive as the only likely conclusion. "However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence. . . . Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290–91 (citations omitted). Further, even if the Assignment's date is incorrect, a potential typographical error is insufficient to establish Keenray's intent to deceive the PTO. *See Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1353 (Fed. Cir. 2008) ("Mistake or negligence, even gross negligence, does not support a ruling of inequitable conduct").

In sum, the Court finds that Plaintiffs have failed to establish that Keenray procured the '810 Patent through inequitable conduct. Accordingly, the Court respectfully recommends that summary judgment should be denied on Count I.

## C.    Lanham Act Claims

Section 43(a) of the Lanham Act provides that any person who "uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin" which:

> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1)(A)–(B). To establish an unfair competition or false advertising claim under Section 1125(a)(1)(B), a plaintiff must establish that the defendant: "(1) made false representations, (2) for goods, (3) in interstate commerce, (4) in commercial advertising or

26

promotion, (5) about a material facet of [the plaintiff's] product, (6) that caused damage to [the plaintiff]." *GCCA, LLC v. MACCG, LLC*, No. 21-CV-5022 (JGK), 2024 WL 837883, at *12 (S.D.N.Y. Feb. 28, 2024) (quoting *Spotless Enters., Inc. v. Carlisle Plastics, Inc.*, 56 F. Supp. 2d 274, 277 (E.D.N.Y. 1999)).  Additionally, "before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).

First, Plaintiffs argue that Keenray made false representations in bad faith to Amazon that Keenray owned the '810 Patent and that Sound Around infringed on the '810 Patent, thereby causing them harm after Goldenhot's towel warmer was delisted from Amazon's online stores. (*See* Pls.' Mem., ECF No. 100-1 at 16–19.)  Plaintiffs' argument is based on the same evidence as their inequitable conduct argument, which the Court already determined raised triable fact issues.  (*See* § V.B., *supra*.)  For this reason, summary judgment is not warranted for a Lanham Act violation based on Keenray's assertion of its patent rights.

Plaintiffs also fail to show that Keenray's representations constituted "commercial advertising or promotion" under the Lanham Act—in other words, "(1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, . . . disseminated sufficiently *to the relevant purchasing public*." *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (emphasis added) (citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002)).  "As a threshold matter, it is not clear that a report made to Amazon can be considered 'disseminated

sufficiently to the relevant purchasing public.'" *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 290–91 (E.D.N.Y. 2022) (quoting *Fashion Boutique*, 314 F.3d at 56). This is because "[p]roof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." *Fashion Boutique*, 314 F.3d at 57. Indeed, courts in this Circuit have rejected claims that reports made to online platforms like Amazon meet the sufficient dissemination test. *See, e.g.*, *Editor's Pick Luxury LLC v. Red Points Sols. SL*, No. 22-CV-07463 (ALC), 2023 WL 6385993, at *5–6 (S.D.N.Y. Sept. 29, 2023) (finding reports of alleged IP infringement to Shopify did not meet sufficient dissemination test and dismissing Lanham Act claim); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441 (WFK)(TAM), 2021 WL 5409605, at *11–12 (E.D.N.Y. Aug. 27, 2021) (finding that reports of trademark infringement to Amazon did not constitute "dissemination to the purchasing public"), *adopted by*, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021). Plaintiffs are thus not entitled to summary judgment on their Lanham Act unfair competition claim based on Keenray's reports to Amazon.

Finally, Plaintiffs argue that Keenray violated the Lanham Act by labeling and displaying Goldenhot's ETL control number on Keenray's products. (*See* Pls.' Mem., ECF No. 100-1 at 21.) The only admissible evidence in the summary judgment record concerning Defendant's alleged misuse of Goldenhot's ETL number is an assertion by Mr. Chao that he examined "Keenray's product" (ostensibly in China) and found that it wrongfully listed Goldenhot's ETL number on a label. (*See* Chao Dep., ECF No. 100-18 at 21:1–22:17.) Notably, it is unclear from the deposition excerpt which product Mr. Chao examined. Further, Plaintiffs offer no admissible evidence that Keenray made a false or misleading statement in connection with the ETL number or that the allegedly misused ETL number on the label

28

traveled in or affected interstate commerce.  Plaintiffs therefore fail to meet their burden of showing that no genuine factual dispute exists regarding Keenray's use of Goldenhot's ETL number.  *See* Fed. R. Civ. P. 56(c)(1)(A).

Accordingly, the Court respectfully recommends that the Court deny Plaintiffs' motion for summary judgment on Counts II, V and VI.

## VI.  CONCLUSION

For the foregoing reasons, the Court respectfully recommends the following construction of the '810 Patent's claim: "The ornamental design for a blanket towel warmer, as shown and described in FIG. 1–10.  The 'gray coloring and patterns' represent the degree of shading, not surface ornamentation."  (*See* ECF Nos. 62, 64, 69, 71.)  The Court further recommends that Plaintiffs' motion for summary judgment (ECF No. 100) should be **denied**.

A copy of this Report and Recommendation is being served on all parties via ECF.  Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Gonzalez.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 2, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

29